## Morgan *et al.* *versus* Tener *et al.*

| 83 | 305 |
| 155 | 64 |
| 83 | 305 |
| 198 | 178 |
| 83 | 305 |
| 201 | 164 |

1. A collection agency employed to collect a claim, who place said claim in the hands of an attorney, through whose misconduct it is lost, are liable therefor in the absence of an express stipulation to the contrary in their receipt given for the claim.

2. Where a claim was lost through the misconduct or fraud of an attorney with whom a collection agency had entrusted it for collection, and the replies of the agency to inquiries made were calculated to throw the claimants off their guard, the Statute of Limitations only begins to run against the claimants from the time of their discovery of the fraud.

January 18th 1877.　Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 4, of *Philadelphia county:* Of January Term 1875, No. 243.

This was assumpsit, brought by Morgan & Stidfole against Tener & Davis, to recover the amount of three promissory notes left with defendants for collection.

The defendants pleaded the general issue and the Statute of Limitations. The replications were, "*Assumpserunt infra sex annos*" and fraud, upon which issue was joined.

It appeared at the trial before Briggs, J., that in September 1857, the plaintiffs, who were merchants in Philadelphia, placed in the hands of defendants, who were collection agents, three promissory notes, taking from them the following receipt:—

"Tener & Davis. Collections made in all parts of the United States and Canada.

No. 491.　Philadelphia, Sept. 28th 1857.

Received of Messrs. Morgan & Stidfole the claim below described, to be forwarded by us for collection, by suit or otherwise, at our discretion:—

Note of T. Nuttle, September 30th 1856, six months, $1505.03.
Note of T. Nuttle, April 21st 1857, three months, $603.20.
Note of T. Nuttle, April 20th 1857, one day, $580.92.
　　(Signed)　　　　　　　　　　TENER & DAVIS."

The greater portion of the collection business of the firm was entrusted to the defendants, and this claim was given to them as usual, without any particuar instructions.

Defendants placed the notes in the hands of George M. Russum, a lawyer in Denton, Maryland, for collection, and he in turn, it is alleged, without the knowledge of defendants, placed them in the hands of Joseph T. Atkinson, an attorney in Baltimore. Atkinson, at the request of Russum, appeared for plaintiffs, and in April 1858 brought suit in the United States Circuit Court for Maryland, and obtained judgment against Nuttle for $2998.05 on the 5th April 1859. About the time of commencing suit, plaintiffs paid to defendants fifty dollars for costs, and were afterwards informed by defendants that judgment had been obtained. They also communicated to plaintiffs an offer of compromise, which was refused, and

2 NORRIS—20

[Morgan *v.* Tener.]

in frequent interviews plaintiffs never received any further information of the claim or suit, except that it was *uncollectible*.

In an annual statement rendered in 1866 by defendants to plaintiffs' successors in the business, was contained the following reference to the plaintiffs' claim :—

"No. 491.   Tilghman Nuttle, Caroline Co., Maryland.   (M. & S. claim.)   Judgment uncollectible."

It appeared that Russum compromised the claim with Nuttle for twenty cents on the dollar, and directed Atkinson to satisfy the judgment, which he did September 28th 1859, not receiving the money in settlement, but obeying the instructions of Russum.   No part of the money was ever received by plaintiffs.

These facts first came to the knowledge of plaintiffs in 1869, when they heard that a claim against Nuttle would be good.   They communicated this information to defendants, who then, for the first time, disclosed the name of their agent, and, at the suggestion of plaintiffs, gave an order, in writing, to an attorney in Maryland, to take charge of the claim.   His reply revealed the fraud of Russum.

In October 1869 plaintiffs brought this suit to recover the amount of the claim.

The court entered a nonsuit, which the court in banc refused to take off, Briggs, J., in an opinion holding that there being no evidence of fraud on the part of defendants, the only question was whether the claim against defendants was barred by the Statute of Limitations, and said :—

"All of the authorities show that the statute begins to run at the time the defendant becomes liable to answer or pay : Campbell's Administrator *v.* Boggs, 12 Wright 524 ; Rhine's Administrators. *v.* Evans, 16 P. F. Smith 192.   That time was, viewed most favorably for the plaintiffs, on the 28th day of September 1859, when Russum had the judgment satisfied.   And unless the defendants have done something to stop the running of the statute, it effectually bars the plaintiffs' right of recovery.   But the plaintiffs allege that the defendants took the case out of the statute by reporting to the plaintiffs, responsive to their inquiries, that the judgment was 'uncollectible.'   While such reply would be unanswerable, had the defendants undertaken to *collect*, as was done in Bradstreet *v.* Everson, 22 P. F. Smith 127, it has not such force or effect where the obligation is to *forward* for collection.

"This relation clearly indicated to the plaintiffs that the defendants were not themselves to collect; and in the absence of negligence on their part in the selection of Russum, or that they knew the answer that the judgment was uncollectible was untrue, they should not be made liable for merely reporting to the plaintiffs what Russum communicated to them.   To hold more than this would convert the defendants from forwarders into insurers.   This can in

[Morgan v. Tener.]

no sense be inferred from an undertaking to forward, and to report information received."

The plaintiffs took this writ and assigned for error the entry of judgment on the nonsuit.

*Charles E. Morgan, Jr.*, and *Robert H. McGrath*, for plaintiffs in error.—We submit that the rule in Pennsylvania is, that the statute did not run against plaintiffs until they knew or ought to have known of the receipt of the money, and if they applied to their attorneys and received false or evasive answers, or were misled by their answers, the running of the statute is arrested. It will not begin to run until the facts imputed as fraud are discovered: Derrickson *v*. Cady, 7 Barr 31; McDowell *v*. Potter, 8 Id. 190; Riddle *v*. Murphy, 7 S. & R. 235; Rush *v*. Barr, 1 Watts 120.

Whether or not there was fraud or fraudulent concealment, or the plaintiffs had exercised due diligence in making inquiries about their claim, and were put off their guard by the answers and written reports thereon made by defendants, were properly questions for the jury, and should have been submitted to them.

Had the defendants been, as they claimed, "mere forwarders" for collection, the fraud of their agent was clear, and it was incumbent upon them to show that he was of good reputation. The defendants, however, were not "mere forwarders," but " collectors," and we contend that their liability is fixed by the following authorities: Bradstreet *v*. Everson, 22 P. F. Smith 134; Krause *v*. Dorrance, 10 Barr 462.

*Gustavus Remak*, for defendants in error, who relied on the opinion of the court below, and contended for the views embraced therein.

Mr. Justice SHARSWOOD delivered the opinion of the court, January 29th 1877.

Had the defendants been merely forwarders of the notes for collection, as the learned judge below thought, the nonsuit might be sustained. Their duty would then have been performed when they had transmitted them to Russum, their correspondent. Russum would have been the attorney of the plaintiffs, and they would have been bound to make inquiry and inform themselves of the state of the proceedings on the claim in his hands. We are of opinion, however, that this was not the true construction of the contract as evidenced by the receipt. Its terms are, "to be forwarded by us for collection by suit or otherwise, at our discretion." The defendants were to have the control and direction of the attorney to whom the notes should be forwarded. The proceeding was to be by suit or otherwise at their discretion. In the margin of

[Morgan *v*. Tener.]

the receipt, after the names and address of the defendants, is the advertisement, " Collections made in all parts of the United States and Canada." They recognised that the notes were still in their hands for collection after they had been forwarded by their return to the plaintiffs or their agents, the firm which had succeeded them in business. It is headed, "Annual statement of claims in hands of Tener and Davis, belonging to Charles E. Morgan & Co.," in which is comprehended the claim against Nuttle, marked as "M. and S.'s claim," to show that it belonged to the plaintiffs. The defendants were attorneys to collect, though of necessity it had to be by forwarding to another for collection. The receipt only expressed what was necessarily implied from the nature of the business. That an attorney employed to collect a claim who places it in the hands of another is liable in the absence of an express stipulation to the contrary on the receipt of it, for misconduct by such other, is assumed as undoubted law in Krause *v*. Dorrance, 10 Barr 462, and is shown to be applicable to collecting agencies, where the necessity of employing attorneys at a distance is apparent, in the well-considered judgment of this court in Bradstreet *v*. Everson, 22 P. F. Smith 133.

The defendants then being liable on the receipt of the money by Russum, and his unauthorized satisfaction of the judgment, when did the Statute of Limitations commence to run against the plaintiffs? This question was fully considered in Rhines *v*. Evans, 16 P. F. Smith 195, and the law clearly and concisely stated as deduced from an examination of all the authorities by the present chief justice of this court. "The right of action accrues and the statute begins to run from the time of the attorney's receipt of the money, even though he gives no notice of its collection, the law deeming it gross negligence on the part of the creditor to neglect to make inquiry for six years, unless the attorney has been guilty of concealment or some act to put his client off his guard." It was in evidence in this case that the clients had made frequent inquiries of the defendants as to their claim, and were informed both verbally and in writing, that it had been prosecuted to judgment and was "uncollectible." This certainly was well calculated to put the plaintiffs off their guard. If, as we have seen, the defendants were liable when Russum satisfied the judgment for his misconduct or fraud, it is not material whether they made this answer to the plaintiffs innocently and in good faith or otherwise. It was sufficient to put them off their guard, and is therefore a good defence on their part to the plea of the statute, which began to run against them only from the time of their discovery of the fraud.

Judgment reversed, and *procedendo* awarded.