John W. Rosencrance and B. W. Rosencrance, doing
business as Rosencrance Brothers, now to the use of
John W. Rosencrance, *v.* George J. Johnson, adminis-
trator of George Houser, deceased, Appellant.

*Contract—Extra services—Decedents' estates.*

Where a decedent in his lifetime agreed to pay plaintiff a certain amount
per month for " board, washing and mending," the plaintiff cannot recover
for extra services incident to the illness of the decedent. Prima facie the
contract covered all such household attendance and attention as are usual
in families of the same situation and circumstances of life, including the
chances and changes of health and sickness.

*Statute of limitations—Payment—Identification of debt.*

To take a debt out of the bar of the statute of limitations, the identifica-
tion of it must be made by the debtor at the time of the promise, or pay-
ment or act relied on. An identification by mere inference of the jury
from other collateral matters is not sufficient.

In an action against an executor to recover for services rendered to the
decedent evidence of the receipt of money by the plaintiff with a direction
by the decedent to credit it on his account, is insufficient to submit to the
jury to determine therefrom if the payment was made on the very debt in
suit.

*Contract—Claim for services—Decedent's estate.*

In an action against an executor to recover for services alleged to have
been rendered to testator, it is proper to exclude evidence of the character
of the decedent for punctual payment of obligations, of the income from
his farm, of the fact that he kept account books which could not be found
after his death, and of his declaration as to what he was going to do when
he left plaintiff's house.

Argued March 14, 1899. Appeal, No. 374, Jan. T., 1898, by defendant, from judgment of C. P. Bradford Co., Sept. T., 1897, No. 77, on verdict for plaintiff. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit for services. Before PECK, C. J.

At the trial it appeared that on January 21, 1889, George Houser went to board with John W. Rosencrance and B. W. Rosencrance, agreeing to pay them $14.00 per month for his board, washing and mending. Plaintiff's claim amounted to $2,620, and included items for extra services during Houser's illness. Portions of the claim were more than six years old.

When George J. Johnson, the defendant, was on the stand his counsel offered to prove by him, to be followed by the testimony of other witnesses, the general reputation of the decedent, George Houser, in the community in which he lived, up to the time of his death as a business man, a man of integrity, and a man who was peculiarly tenacious in the payment of all his debts and obligations.

Plaintiff objected to the offer as irrelevant, immaterial and incompetent.

Objection sustained. Defendant excepted. Bill sealed for defendant. [1]

Defendant offered to prove by William Arnold what Mr. Houser said he was going to do when he left the house of the witness on a certain Sunday night.

Plaintiff objected to it as irrelevant, immaterial and incompetent.

Objection sustained. Defendant excepted. Bill sealed for defendant. [2]

Defendant offered to prove by the same witness the income of the farm the next year after the death of George Houser, as being some evidence tending to show the income during the life of George Houser and his ability to have paid all his obligations.

Plaintiff objected to the offer on the ground that it is irrelevant, immaterial and incompetent, and that the income from the farm, as the result of the witness's labor in 1897, is no criterion by which you can judge of the income of the farm prior to Mr. Houser's death, in the manner in which the farm was then run and managed.

Mr. Young, of counsel for defendant: " Q. Are you there yet on the farm ? A. No, sir, I wasn't there then."

Plaintiff also objected that the evidence already shows that the farm of George Houser was worked on shares by the plaintiff from 1892 up to the time of his death, and that there is no evidence showing the nature of the contract.

Objection sustained. Defendant excepted. Bill sealed for defendant. [3]

Defendant offered to prove by H. I. Brown, and by others to follow, that Mr. Houser at the time that he was living at Mr. Rosencrance's, kept account books with the different men with whom he had transactions. To be followed by evidence that after the death of Mr. Houser no account books could be found by the administrator of his estate.

The Court: What is the object of this offer?

Mr. Little, of counsel for plaintiff : For the purpose of showing, or having a tendency to show, that the books kept by Mr. Houser of his transactions with the Rosencrances during the time he lived there, he having died at the house of the Rosencrances, were withheld from the administrator or destroyed by the plaintiff in this case, for the purpose of preventing the administrator from showing the state of the accounts existing between the parties at the death of George Houser.

Plaintiff objected to the offer as irrelevant and immaterial.

Objection sustained. Defendant excepted. Bill sealed for defendant. [4]

Defendant offered to prove by C. E. Barrowcliff and by other witnesses, that they worked for George Houser during the time he was living at the Rosencrances, that he kept an account in a book, of the work with them, and that when the witness came to settle with him he read off the account from his book, for the purpose of showing that Mr. Houser kept books of account at the time he was living at the Rosencrances.

Plaintiff objected to the question as irrelevant and immaterial for the purpose offered.

Objection sustained. Defendant excepted. Bill sealed for defendant. [5]

Defendant offered to prove by the same witness that when he came to settle with Mr. Houser, Mr. Houser had him credited with $1.00 more than he had charged to Mr. Houser, and that

Mr. Houser insisted upon his taking it, and was bound to settle by his own books, and did pay him the $1.00 extra. This is for the purpose of showing Mr. Houser's correct business habits and desire to pay according to his accounts as he kept them.

Plaintiff objected to it as irrelevant and immaterial.

Objection sustained. Defendant excepted. Bill sealed for defendant. [6]

The court charged as follows:

[This is an action of assumpsit brought by the plaintiff, John W. Rosencrance, against the administrator of George Houser, for the recovery of an alleged account which he claims to hold against the estate. You will notice that on the admission of the evidence the ordinary rules of evidence have not been observed, and the reason of that is this: That George Houser being dead, the surviving parties, B. W. and John W. Rosencrance, are not witnesses, and the assignment to John W. Rosencrance was excluded, because, in our judgment, it did not come within the province of the act of assembly in cases of this character. And we also, for certain reasons, excluded the account book. If the parties had all been living, then all of the parties might have been witnesses, but, under the circumstances of this case, the court has excluded them all, and excluded many things, perhaps, that you would like to know about, and in order that you may be able to find a verdict that will be satisfactory to yourselves and just to the parties interested.

It appears from the evidence that sometime prior to January 21, 1889, George Houser lived in the township of Tuscaroro in this county, with his sister. Mr. Houser, as I understand, was never a married man; at least, he was not when his history has come to the attention of this court. When his sister died he, having no family, went over and made a contract with John W. and B. W. Rosencrance, and it is for the board which he then contracted that this suit has been brought, in part. The evidence shows that on January 21, 1889, he made a contract with the Rosencrance brothers that they were to board him and do his washing and mending for $14.00 per month. To this fact two witnesses have been called—Burton Quick and George Merritt—who testify positively that that arrangement was made and entered into on that day between these parties.

Mr. Quick could not tell the day of the month, but said it was the fore part of January, 1889, and Mr. Merritt swears that it was on January 21, 1889, and refers to it as a time when he went to Mr. Rosencrance for some money, which was paid and of which he has a memorandum on his book. Things moved along until sometime in January, 1890, when Mr. Houser was taken severely sick and required considerable attention on that occasion. It appears that the Rosencrance brothers attended to him and cared for him, and when he got so that he was able to talk about matters he said to them that he wanted them to take care of him when he was sick and that he would pay them for it. And this, I think, is mentioned by two witnesses—Asa Rosencrance, and some other witness who was present on that occasion. They were to take good care of him and he was to pay them well for it, is substantially the language of the witnesses. As to those two contracts none of the parties have been called as witnesses, nor as to any other matters in this case, because George Houser being dead, the Rosencrances could not testify as to what took place between them and Mr. Houser.

There is considerable evidence as to the state of George Houser's health, and the evidence seems to show that his health was much better in summer than in the winter season. Some of the witnesses testify that in the winter season he was in bad shape one third of the time, and others say that in their judgment he was sick at least one half of the time; but you are to take all the evidence that is before you and determine as best you may be able to do as to what length of time this old man was sick, and for what length of time they should be compensated more than he was to pay for his board, washing and mending. They were to take care of him under circumstances of this kind, and they were to be paid for it, and if they never had been paid, or if you are satisfied from the evidence which is now before you that those parties never had been paid, then you should give them such compensation as in your judgment they are entitled to.

On the question of compensation you will find that the evidence differs. One witness—I think, Asa Rosencrance—says that when he was sick it was worth $2.50 a day to take care of him as he was taken care of during the time of his sickness; that they were entitled to that amount extra. Mr. Gray says

that in his judgment they were entitled to $5.00 a week extra, and the doctor who was called says that there were times when they ought to have from $5.00 to $7.00 a day extra. In this connection let me call your attention to the evidence on the part of the defendant. They called a man who professes to be a nurse —Mr. Decker—who says that he has been in the business some twenty-six years, and during that time he is said to have had about twenty-three patients, if I remember his evidence correctly, and in his judgment it was not worth more than $2.00 a day for care of the kind that would have to be furnished to a man as sick as Mr. Houser was, as it was described to him. But you should take into consideration that he was only to act as a nurse, and had nothing to do about taking care of bed clothing, and nothing to do about taking care of the clothes of the patient, and nothing to do with the question of board. Mr. Houser was to be boarded under that arrangement. So that you should give it your careful consideration, so as to determine just what, in your judgment, these brothers were entitled to receive for the labor and attention which they gave this old man while he was sick. Take all the evidence there is in the case. They called another man—a young man by the name of Yielding—and he could not state about it specially, and they called Dr. Stevens, and he gave you his idea as to what they ought to be paid. You will remember what he testified to on that subject. There were a number of witnesses called as to the state of health of this old man, as we have already called to your attention. Some of them thought he was sick one third of the time during the winter, and others thought he was sick half of the time, so as to require extra care and attention. I think they all admitted that there were times, even in the winter, when he would be able on pleasant days, to go over to his farm and do some light work. Dr. Stevens testified that he first commenced services for this old gentleman about 1889, and that he was called from time to time, I think, up until 1892. He did not think that the old man was very sick or that he required any extraordinary attention. But you should take all the evidence into consideration and determine for yourselves, after listening to all the evidence as produced to you by the witnesses that are called, what proportion of the time the old gentleman required extra care and nursing, and if you are satisfied that these brothers have not

been paid it would be your duty to pay them a fair compensation for all the extra care that they gave this old man during these times.

There is also evidence that these brothers did considerable work for the old gentleman, Mr. Houser. They commenced in 1889, I think, cutting a field of seven or eight acres of rye, and did some ditching and some other work about the farm. Now, we will not follow this evidence through, because it has been commented upon by the attorneys upon the one side and the other, but will only call your attention to some special matters, for the purpose of calling to your mind some evidence that throws some light on the case before you. You will also remember that there was work done upon the ditches, that there was a wire fence built and that there was some stone fence built—but the stone fence, as I remember it, was built by Mr. Morrow, and whether these brothers built any fence, I do not now remember. I do not remember that they built any stone fence. They may have hauled stone for the fence; that you must determine from the evidence in this case. Mr. Morrow worked for the old gentleman and his services were paid for by the old man, himself, so that no claim could be made for any stone wall that he laid, but there were certain fences that these brothers did repair, and for such work as you find that they did for Mr. Houser, that has not been paid for, they should be compensated. You will also remember that they not only worked about these ditches, but that they hauled stone with their team, and that there was considerable work done by the team of the Rosencrance brothers. It is for you to determine how much, and under what circumstances they did it. There is also some evidence in relation to getting out certain lumber which the old gentleman ordered, and they hauled it up the mountain side and drew it to the mill, and finally drew it back to the Houser farm.

There is one other important item for you to consider, and that is the compensation, if anything, that should be allowed to these brothers for caring for stock and doing the chores for this old man, Houser. The evidence is that they did the chores for this old man, Houser, from 1889 up to the time of his death, and he died, as the evidence shows, on December 31, 1896. You have heard the evidence upon this subject, and it is for

you to determine what compensation, if anything, you will allow these men for their services in caring for the stock of Mr. Houser. Mr. Morrow testified as to what it was worth, and I think Asa Rosecrance testified as to what it was worth, and also testified as to the amount of stock that Mr. Houser had upon his place during these years, and as to what they were to do when they went there, and that at one time the stock was reduced to a pair of colts and some chickens, and perhaps one or two cows, but that at other times he had as high as seven or eight cows. It is for you to take this evidence into consideration and determine what compensation the brothers should receive for the work that they did in this case.

The evidence in this case is entirely for you. You are judges of the evidence. If a witness swears to a thing which seems to you to be reasonable and probable, and carries conviction to your minds as being truthful, you should give such witness such credit as you believe he is entitled to. But if a witness swears to a story that seems to be improbable, and which does not carry conviction to your minds, and which does not seem to be reasonable, you should give that witness just such weight as you believe he is entitled to. You are not obliged to believe a witness because he swears to a certain state of facts if the facts do not seem to be reasonable and probable, and such as carry conviction to your minds. You are not bound to pay any attention to such a witness, but you should give each witness such credit as you believe he is entitled to.

The defendant has raised the statute of limitations, and ordinarily an account which has run six years is barred; all over six years is barred by the statute of limitations. This suit was brought in May, 1897, and unless you are convinced, as we shall hereafter instruct you, you should bar out all of the evidence back of May, 1891, as being over six years from the time the suit was commenced. But the plaintiff, in answer to that, claims that the brothers received payments; that this old man paid them at one time $10.00—at Laceyville, in 1895—and also paid them a hog, which was to be turned upon their account, and the plaintiff claims that that takes the case out of the statute of limitations; that it was an acknowledgment by Mr. Houser of the validity of the account which these brothers had against him.] [7]

Defendants' points and the answers thereto among others were as follows :

1. In actions against decedents' estates, claims which though on their face accruing for years are not presented as legal demands until after the death of the alleged debtor, come before the court discredited by the claimants' own acts, and every intendment will be made against them, and failure to ask for payment during a considerable period will create a presumption that all demands were compensated as they arose. *Answer :* That would be law in case of domestic services. But we say to you that unless you are satisfied from all the evidence in this case that the services charged for by the plaintiff have not been paid, then you should ignore these accounts or claims of the plaintiff. But if you are satisfied from the evidence which is before you, from the witnesses who have testified before you, that the accounts of the Rosencrance brothers have not been paid, then, as we have said to you, you should compensate them as you would compensate any other person who has a claim against the estate. But you should examine all these accounts closely, and give them close care and attention, because these claims are against a dead man's estate and he cannot answer for himself. If he were present he might make some explanations or suggestions which might throw a different light upon this case, and if he were permitted to do that, then these brothers might answer on their side. But all parties are shut out here, and you must get such light from the evidence as will enable you to determine it as best you can. [8]

2. Claims against a decedent's estate for boarding the decedent, and for labor performed for him, are presumed to have been paid as the claims accrued, and this presumption can only be overcome by affirmative proof that payment has not been made; therefore, unless you find from affirmative proof that the claims have not been paid, your verdict should be for the defendant. *Answer :* We affirm this proposition. But we say to you that it is particularly applicable in cases of domestic services. To illustrate, if one of these brothers had hired out to work for Mr. Houser by the month or by the day or by the week, then the presumption of payment would have arisen at the end of the time when he was to be paid. If he was to be paid by the month, then the presumption would be, in the absence of all

evidence, that he was paid when Mr. Houser agreed to pay him. And the same would be true as to a claim for board. You must be satisfied from all the evidence in this case whether or not he has been paid, and in taking into consideration whether he has been paid or not you should call to mind all the evidence upon that subject. You should remember the evidence of all the witnesses who have been called. The first witness that I call to mind is Asa Rosencrance. Asa Rosencrance swears that in 1894 Mr. Houser wanted some stone drawn, to be placed in a certain ditch, and that B. W. Rosencrance replied to him that he would not do it—at least, he objected to doing it—and said that he had not been paid for what work he had been doing, and that Mr. Houser replied that he should charge it to him; that he was good, and that he should charge it to him and that he would pay for it. There is also the evidence of other witnesses that when he requested the brothers to do certain things for him he said to them that they should charge it and that he would pay them for it. There is also the evidence of Mr. Culver. Mr. Culver, you will remember, wanted to buy the farm, and asked Mr. Houser whether or not it would not be better for him to sell it, and whether the interest which he would receive would not be better for him than it would to manage the matter the way he did, and he said to Mr. Culver that as long as he had the farm he was sure of a home . that he was being well cared for, and that his farm would be good to pay any debts that he had whenever he got through with it. You will also remember the evidence of Mr. Carter, who said he was an old friend of Mr. Houser; that he frequently consulted with him in relation to his business and advised with him about it, and that at one time when he was at Laceyville he had a conversation in which he advised him to make a will, and that on that occasion he advised him to make a will so that his matters might be in better shape when he came to die; that he said to him that he was in poor health, or suggested to him that he was in poor health, and that when he died these brothers might bring in a large bill against him, and that his reply was that he was being well cared for and that they might as well have the property as any one else, or that in substance; I do not pretend to use Mr. Carter's exact words. You must refresh your minds with all the evidence

and make up your minds whether or not these brothers did or did not receive their pay or compensation for the labor and work which they were doing for Mr. Houser in these cases. [11]

5. A partial payment will operate to toll the statute, but to have this effect it must be shown unequivocally that the payment was on the claim in suit, and any uncertainty in the identification of the debt upon which the payment is alleged to have been made is fatal to the plaintiff's claim as to all that accrued more than six years from the commencement of this suit. *Answer:* We affirm this proposition. But it is for you to take into consideration, in considering this proposition, whether the payments made were upon the claims in suit here. Is there any evidence of any claims or demands which the brothers had against Mr. Houser, except the claims in suit. [12]

6. Unless you find from the evidence that the alleged payments were made on the very claim for which this suit is brought, you must disregard all of the claims that accrued more than six years before the bringing of this suit. Directions to give credit for the $10.00 or the price of the hog, are not identifications of the debt, and are not sufficient to prevent the bar of the statute. *Answer:* We affirm the first proposition made in this point, but whether or not the payment of the $10.00 at Laceyville, or the payment of the hog, did apply upon the accounts in suit in this case, we leave to you. If they did, then we instruct you that it takes the whole case out of the statute, because they were made within six years. If you find as a fact that they were made upon the accounts sued for in this case, then it takes the whole claim out of the statute of limitations. [13]

Verdict and judgment for plaintiff for $2,660.75. Defendant appealed.

· *Errors assigned* among others were (1–6) rulings on evidence, quoting the bill of exceptions; (7) charge of the court, quoting it; (8, 11–13) answers to defendants' points.

*W. J. Young,* with him *S. W. & Wm. Little,* for appellant.— The claims for services against a dead man's estate not presented as a legal demand until after the death of the alleged debtor will have every intendment and presumption made against them: Mueller's Est., 159 Pa. 590; Thompson v. Stevens, 71 Pa. 161.

On the question of affirmative proof by plaintiff to overcome the presumption of payment, we cite Carpenter v. Hays, 153 Pa. 432, Beale v. Kirk, 84 Pa. 415, Reed v. Reed, 46 Pa. 239, Gregory v. Com., 121 Pa. 611, and Hughes's Est., 176 Pa. 387.

The constructive acknowledgment of a debt arising from part payment within six years before suit brought is sufficient from which to infer a promise to pay. But this inference cannot be made until the part payment is clearly established. Even where the acknowledgment is express, instead of constructive, or the promise direct, rather than inferential, no ambiguity or uncertainty in the one or the other can be tolerated: Hazelbacher v. Reeves, 12 Pa. 264; Burr v. Burr, 26 Pa. 284; Barclay's App., 64 Pa. 69; Hughes's Est., 176 Pa. 387.

*Wm. Maxwell* and *C. M. Culver*, of *Stewart & Culver*, for appellee.—It is irrelevant to introduce evidence of the character of a party where his general reputation for honesty is in no way involved in the issue: Battle & Webster v. Laudenslager, 84 Pa. 446; Weidler v. Farmers' Bank of Lancaster, 11 S. & R. 134; Porter v. Seiler, 23 Pa. 424; Douglass v. Mitchell, 35 Pa. 445.

Performance and receipt of services generally raise an implied promise by him who receives, to compensate him who performs, but this implication may be rebutted; when the parties are parent and child, or members of the same family, the relationship excludes the implication of a promise. In all cases except that of parent and child, there must be evidence beyond relationship that the creation of a debt was not intended: Curry v. Curry, 114 Pa. 367; Harrington v. Hickman, 148 Pa. 401.

There was nothing in the character of the claim presented by plaintiffs to justify the court in holding the plaintiff to the affirmative proof that the claim had not been paid: Carpenter v. Hays, 153 Pa. 432.

The acknowledgment of the validity of a claim at any time before the statute has become a bar will toll the statute for six years from the time of such acknowledgment: Hazelbacher v. Reeves, 9 Pa. 258; Palmer v. Gillespie, 95 Pa. 340.

OPINION BY MR. JUSTICE MITCHELL, May 22, 1899:

The plaintiff's claim was one which raised a twofold requirement of strict proof, in that it was in the first place a claim for

extra compensation over and above the amount expressly fixed by contract, and secondly, it was a claim against the estate of a decedent for services of a kind which in the ordinary course of life are paid for currently as they are rendered.

1. There is no more fruitful source of dispute and litigation than claims for " extras," and where they are superadded to claims upon an express contract for services of the same or a similar kind they should be made out clearly and explicitly before they are allowed.   The plaintiff gave evidence of an express agreement by Houser, the defendant's decedent, to pay $14.00 a month for " board, washing and mending."   Prima facie this covers all such household attendance and attention as are usual in families of the same situation and circumstances of life, including the chances and changes of health and sickness.   In fact, the plaintiff's own witnesses, professing to use the language of the decedent, spoke of the agreement as one that had provided him with a " home."   The extra services claimed for by plaintiff were of the same class, and differed only in degree, arising from the alleged sickness of the decedent during a considerable part of his latter years, whereby he required more attention. This did not change the nature of the services nor take them out of the agreement.   Where such an agreement becomes burdensome by reason of changed circumstances, the remedy is to make a new one, and the new one should be clearly proved. The case relied on by appellee, Harrington v. Hickman, 148 Pa. 401, is very close in point, and illustrates this requirement. The extra services there were more different in character from those covered by the contract of hiring than those claimed here, but the right of recovery was put expressly by our late Brother WILLIAMS on the evidence of a new and additional contract to pay for them.   In the present case there was no attempt to prove such a contract.

2. The claim for board, etc., against the estate of the decedent, belongs to that class that we have so often had occasion to say requires strict proof: Carpenter v. Hays, 153 Pa. 432; Mueller's Est., 159 Pa. 590; Hughes's Estate, 176 Pa. 387. The plaintiff may be considered as having proved a contract for $14.00 a month, and as having given some evidence, not very strong, but sufficient to go to the jury, that the payments on this account were in arrears at the time of decedent's death.

The latter's declarations as testified to by the witnesses went to this extent, but by no reasonable construction can they be carried any further. There is nothing in any of them to permit the jury to find an indebtedness back of the period of limitation. The strongest of them, during his last sickness, that he "would like to live till he got up, for he owed them a big bill, so he could settle it up," and again to another witness "that he owed them a large bill" are fully satisfied by an application to the arrears on the express contract for board, etc., for a period not exceeding six years. There is no approach to the identification of any other debt, or the extension of this one beyond that period.

Plaintiff also gave evidence of the receipt of $10.00 from Houser, with the direction to credit it on his account, and at another time a hog with similar direction. The learned judge submitted these payments to the jury to say if they were made on the very debt in suit, and in this connection, answering defendant's fifth point, he told the jury they might consider if there was any evidence of any claims or demands that plaintiff had against the decedent, except the claims in suit. This was directly against the case of Burr v. Burr, 26 Pa. 284, where a payment on "that note which I hold of thine" and the absence of evidence that there was any other note than the one sued on were held not sufficient to identify the debt. See also Landis v. Roth, 109 Pa. 621, and Ward v. Jack, 172 Pa. 416. To take a debt out of the bar of the statute of limitations the identification of it must be made by the debtor at the time of the promise, or payment or act relied on. An identification by mere inference of the jury from other collateral matters is not sufficient.

It is not necessary to go over the assignments of error in detail. The evidence of the character of decedent for punctual payment of obligations, the income from his farm, the fact that he kept account books which could not be found after his death, and his declarations as to what he was going to do when he left the witness's house, were properly excluded. They had no direct bearing on the issue.

The judgment however must be reversed on the two main points, first, the so-called extra services in the way of care and attendance were presumptively within the express contract for $14.00 a month, and no recovery could be had on them without

a new contract, of which there was no evidence ; and secondly, there was no evidence to prevent the bar of the statute of limitations as to all of the claim for the $14.00 a month which was more than six years old at the issue of the writ.   It was error to submit either of these claims to the jury.

Judgment reversed and venire de novo awarded.