## Shenk's Estate.

*Decedents' estates—Claim against estate—Boarding and lodging— Contract—Evidence.*

Where at the audit of an executor's account, it is established that a contract was made whereby decedent promised to pay to her son-in-law $100 a year for board and lodging, and that the services were performed, and the son-in-law claims for several years' board and lodging, his claim will not be allowed where there is no competent testimony to determine what was the amount due, and the only witness for claimant is his daughter who testified that when she was nine years old her grandmother had $1,250 in bank certificates drawing four per cent interest, and that when she left claimant's home she still had $1,105, but without any statement that the certificates were the decedent's only source of income. In such a case the evidence is insufficient to overcome the presumption of payment.

Argued Nov. 11, 1914.   Appeal, No. 132, Oct. T.,
1914, by Anna E. Shenk, from decree of O. C. Lan-
caster Co., Feb. T., 1914, No. 6, dismissing exceptions
to adjudication in Estate of Anna E. Shenk, deceased.
Before Rice, P. J., Orlady, Head, Kephart and
Trexler, JJ.   Reversed.

Exceptions to adjudication.

Smith, P. J., filed the following opinion:

Exception is taken to the decree of distribution in
this estate because of an award of $470 to Edward M.
Hatten for boarding Anna Shenk.   This claim was
shown in an exceptional light.   Anna Shenk was the
mother of Hatten's wife.   She had $1,250, which was
invested in bank deposit certificates.   She had no home.
When at the house of Hatten's parents, in their presence
and that of his wife, his daughter Marion, and her
"Uncle Chris," who we infer was Christian Shenk, a
son of the decedent, the question of making some pro-
vision for her was considered.   It was proposed that
she would pay Hatten $100 a year if he would give her a
home with his family.   This was reported to him, he ac-
cepted the offer, and she immediately went to his house,
where she lived for seven and one-half years.   When she
left there she yet had $1,105 of the $1,250 in certificates of
deposit.   During this time she had ordinary drains on
her funds, among them car fare—for she at different
times traveled to distant cities—and she had hospital
and doctor bills.   In addition she erected tombstones to
mark the grave of her husband.   Her certificates yielded
$50.00 a year.   Assuming that there were no deductions
her aggregate income for seven and a half years was
$375.   Her indebtedness to the claimant in that time
amounted to $750.   The claim is for $470, which is
$280 less.   If Anna Shenk had paid Hatten $280 out
of her $375, she had only $95.00 left.   It is known that
she paid one doctor's bill of $22.00, and $50.00 for the

tombstones, thus leaving $23.00. By adding to this $145, the amount by which her principal was reduced, it will make $168, or an average of $22.40 a year for all of her other requirements. The average must have been even less than this. How much less depends upon when the principal was reduced by $145, for from that time her income was diminished $5.80 a year. There was no positive testimony of the exact amount owing Hatten, but there was some of a nature which admitted of a computation which demonstrated that the claim is not in excess of the amount owing.

Two negatives were proved which gave a positive result. Anna Shenk did not have a sufficient income to meet her needs and her principal was not reduced enough to do it. The relationship of the parties is an excuse or what otherwise might have been a too tardy demand. The testimony as a whole seems to have justified the award, and, therefore, the exceptions are dismissed and the adjudication is confirmed absolutely.

*Error assigned* was decree dismissing exceptions to adjudication.

*H. Frank Eshleman*, for appellant.—This is a case strongly reposing in the presumption: a long term, annual payment periods, acquiescence, delay of suit till after death of party: McConnell's App., 97 Pa. 31; Carpenter v. Hays, 153 Pa. 432; Devereux's Est., 184 Pa. 429; Hughes v. Keichline, 168 Pa. 115; Heffner's Est., 134 Pa. 436.

*H. Edgar Sherts*, for appellee.

OPINION BY TREXLER, J., April 19, 1915:

We may assume that two facts are established in this case. First, that a contract was made whereby decedent promised to pay to her son-in-law $100 a year for

board and lodging; the other, that the services were performed according to the contract. There remains for the claimant to prove that the annual amounts are still unpaid. The claimant called one witness, his daughter, who after establishing the contract to the satisfaction of the auditing judge, testified further to certain matters which it is claimed overcome the presumption of payment. The court considered her testimony sufficient. If that conclusion was warranted by the facts it must be regarded as ending the matter.

In considering the question we note that the services were begun October, 1903, and ended April, 1912; that Mrs. Shenk died January, 1913; that her entire estate went to her son the appellant and the wife of the claimant received nothing and that between April, 1912, and January, 1913, no demand was made on her although she had the means wherewith to pay and her son-in-law knew it and that at the time she left her son-in-law she claimed she owed nothing and although appellant convinced her that she was in error as to this, there was no admission on her part that she owed anything excepting $10.00 and no definite claim was made upon her at that time. To overcome the uncertainty which such a state of facts brought with it, the claimant attempts to show the unlikelihood of the payments having been made annually and argues that the facts as produced warrant the inference that they still remain unpaid. According to the testimony of the claimant's daughter who was nine years of age at the time the contract was made, her grandmother then had $1,250 in bank certificates drawing four per cent interest and when she left claimant's home she still had $1,105. The argument is that had she paid the annual sum during the years she boarded with the claimant, her savings would necessarily have been diminished to the extent of the payments. It is argued not that she could not pay but that the state of her finances at the end shows that she did not. To give this argument any force it

was incumbent on the claimant to show that the certificates were her only source of income. Putting aside the unlikelihood of a girl having that intimate knowledge of her grandmother's affairs, we find upon reading her testimony that it cannot be termed satisfactory and convincing. Upon cross-examination of the witness the following colloquy ensued: "Q. How can you swear that everything that this old lady owed your father or your mother was not paid to him; do you know of your own personal knowledge? A. Yes. Q. How? A. I never saw her pay him, and I can take my father's and mother's word—they told me she had not paid them. Q. That is what you mean when you say you know, because they told you? A. Yes, sir, and she told me herself. Q. As a matter of fact, you never saw any money paid over? A. Yes, sir. Q. How often? A. Twice. Q. Then you don't know whether $50.00 or $75.00 was paid except as your father and mother told you? A. And what she told me herself. I would see her give him money as she got in money. And he would ask her for board, and she would say, no, she had bills she must pay, but next year she would give it to him. Q. Then you don't know at all how much was paid? A. The only thing I know at all was paid was the $140. Q. That is all you know was paid? A. Yes, sir. Q. How do you know that your grandmother had only the $1,250? A. I seen the certificates. Q. How do you know she didn't have money besides that? A. I don't know, but I am sure she didn't. Q. You know she had $1,250 of her money on certificates, but whether she had $500 or $600 more, you don't know? A. No, sir."

The trouble with the whole matter is that the amount of appellee's claim, when we try to ascertain it by competent testimony, is indefinite and unascertainable. The only way any precise result is reached is by recourse to the claim itself, which is not evidence. The conclusion of the lower court was expressed as follows, "The testimony as a whole seems to have justified the award."

Under our decisions it requires more than a semblance of proof to establish such claims. They require strict proof: Rosencrance v. Johnson, 191 Pa. 520; Carpenter v. Hays, 153 Pa. 432; Mueller's Est., 159 Pa. 590; Hughes' Est., 176 Pa. 387.

The decree must be reversed on the ground that the claimant has not overcome the presumption that the board bill was paid by the decedent in her lifetime and that while there may be an inference that something is due him there is no evidence to establish what amount remains unpaid. The appellant admits that the $10.00 is due the appellee and that sum should be awarded to him.

The decree of the lower court is reversed and the record is remitted to the orphans' court to distribute the fund in accordance to this decree; the costs of this appeal to be paid by the appellee.