## Montgomery's Estate.

*Statute of limitations—Bar of claim—Tolling of statute—Subsequent promise to pay—Evidence—Insufficiency—Indebtedness on several obligations—Payment—Application to barred claim without debtor's consent.*

1. To remove the bar of the statute of limitations, the promise to pay must refer distinctly and specifically to the original debt.

2. Where a person is indebted to another on several distinct obligations, one of which is barred by the statute of limitations, and thereafter the debtor makes a payment, the application of the whole or a part of such payment to the barred claim, without the knowledge or consent of the debtor, cannot operate to toll the statute as to such claim.

3. A claim against a decedent's estate was properly disallowed where it was based on an oral promise by decedent in 1904, since which time a greater period than the statutory limitation of six years had elapsed without decedent having renewed his promise to pay, or having paid any interest thereon, and, although it was contended that decedent had made a payment on account after the claim had been barred, it appeared that decedent was indebted to claimant on several other obligations, not barred by the statute, and made a payment to claimant, part of which claimant applied to the barred claim without the knowledge or consent of deceased.

Argued Oct. 12, 1917.  Appeal, No. 133, Oct. T., 1917, by Robert Thompson, from decree of O. C. Allegheny Co., Feb. T., 1917, No. 100, dismissing exceptions to adjudication in Estate of Samuel Montgomery, Deceased.  Be-

fore MESTREZAT, POTTER, STEWART, MOSCHZISKER and WALLING, JJ. Affirmed.

Exceptions to report of auditing judge.

The facts appear.from the following opinion by MIL-LER, J.:

Two claims are presented by Robert Thompson; one a note of $3,000.00 dated October 1, 1903, on which there is a credit allowed of $1,000.00, leaving a balance due with interest of $2,169.00; the other, a general claim not evidenced by any writing, in the sum of $5,896.00, with interest from January 1, 1904, on which two credits have been recently allowed; the two claims thus presented are with interest in the sum of $11,066.86.

In addition, although not presented for payment, it appears that the claimant holds two notes of the decedent, one in the sum of a thousand dollars, dated June 18, 1902, and the other in the sum of five hundred dollars, dated October 16, 1905. They are not presented, it being stated that they had been adjusted by various credits; they were explained at the audit, but still seem to be in the possession of the claimant.

There was also a second note of the three parties to the Oakland Trust Company of $3,000.00, made February 1, 1913, which later Moore and Montgomery carried, paying Thompson's share thereon; on settlement Thompson owed to Montgomery $629.37 for this transaction, which he credited on the large claim after Montgomery's death.

It .is conceded that the $3,000.00 note of October 1, 1903, by reason of the proof of the payment of interest thereon before decedent's death and certain other acknowledgments in connection therewith, is a valid subsisting claim.

The claim in the sum of $5,896 presents serious difficulties. The history of this claim, as testified to by Mr. Moore, in substance, is as follows:

Some time previous to 1904 Montgomery, Thompson

and Moore, with others, were interested in a gold mining proposition; Moore and Montgomery each had the same interest therein and each borrowed from Thompson three thousand dollars to pay for their respective original investments; as an evidence of this the note from Montgomery to Thompson was given.

Evidently, the gold mining venture was not a success, and in the fall of 1903 a reorganization was effected including the three parties named and other stockholders who got stock of the new company to the amount represented by their original investments. This reorganization involved the payment of the debts by the stockholders who continued. Thompson paid the shares of Moore and Montgomery, and in the fall of 1903 it was agreed between them that Moore and Montgomery each owed Thompson $5,896.00 for their shares of the debts that he had paid for them. Montgomery seemed to have been the secretary or party who kept record of the calculations in arriving at the foregoing amounts and to have thereafter continued in that capacity, but no written evidences are found among his papers. Moore recognized, and still recognizes, his individual debt in the foregoing amount to Thompson, and has been reducing it. What the amount may be that he still owes, is not before this court, nor is it material. He says that his understanding is that Montgomery continued to recognize the debt; that he and Thompson had other transactions which were adjusted in his, Moore's, office, and that various checks and receipts passed between them; he says that shortly before Montgomery died he stated that he would like to sell some real estate and settle with Thompson; but he is not able to state, nor does it appear in evidence, that the settlement he contemplated was on the other transactions between them or on the three thousand dollar note, which he then still clearly owed to Thompson, or to the adjustment of the other note in the same amount that the parties had carried between themselves in the Oakland Savings & Trust Company, or

whether the settlement included, and was intended to be, a recognition of the open, general claim of $5,896.00.

It appears that in October, 1915, Montgomery, the decedent, gave Thompson a check for two thousand dollars; neither the check nor the stub showed for what it was given; Thompson has given credit for one-half of this payment on account of said note, crediting the balance on his general claim of $5,896.00; there is no evidence that he told Montgomery how he would apply this credit or that Montgomery gave the check or any part thereof in recognition of the other debt, or knew that it was so applied; so far as the evidence indicates it was the self-serving voluntary application by the creditor of this check upon what he held to be two obligations to be due to him from Thompson.

After Montgomery's death, as stated before, the administrator and Moore paid the balance of the Oakland Trust Company note; of the whole payment to the extent of $629.37, Thompson on May 5, 1916, allowed as a credit toward his claim of $5,896.00. There is no evidence of any agreement between the administrator or Thompson as to what indebtedness was to be credited with this amount.

Evidently no interest was ever paid on the alleged indebtedness of $5,896.00, for Thompson claims interest on the full amount from 1904.

All the other indebtedness involving business transactions between Thompson and Montgomery whereby Montgomery was indebted to Thompson are evidenced by notes. The large claim in question depends wholly upon the alleged adjustment between the parties fixing a debt in 1904, and Mr. Moore's testimony is that these parties met continuously, discussed their mining transactions and other transactions, adjusted differences between themselves, and while he says Montgomery paid interest on this claim, it appears, if it was paid, that Thompson allows no credit therefor, and thus repudiates the payment of interest thereon.

The defense to the claim is, first, lack of sufficient evidence to establish it clearly, and, second, the bar of the statute, even if it did exist in 1904. As indicated before, the evidence is sufficient to establish the fact of a recognized indebtedness by Montgomery to Thompson in January, 1904, or the latter part of December, 1903, of $5,896.00. From that time on, there is no clear proof of the recognition of this particular claim by Montgomery, of his promise to pay it, or any interest paid thereon, or any credits allowed for a period far exceeding the statutory limitation of six years, other than the voluntary credit made by Thompson in 1915, and this without any evidence of notice to, or agreement by, Montgomery that it should be applied as a credit on the original debt and involving an acknowledgment of the debt. There is no evidence of a direct, clear and unequivocal promise, express or implied, from Montgomery to Thompson, or to Thompson's duly accredited agent, of his liability for or indebtedness to, Thompson, coupled with a promise to pay made at any time. The fact that Moore recognized his original indebtedness to Thompson and acknowledges he still owes Thompson on account thereof, and that he believes that Montgomery is indebted to Thompson on a like claim, is not sufficient to bring this testimony within the strict standard of testimony which must be clearly established to avoid the bar of the statute. In view of the fact that Moore testifies that these men had many other dealings, some of which have been brought into this case, and others of an outside character, involving monetary transactions between them, the evidence is of a very doubtful character upon which to find as a fact that these transactions were in connection with, an acknowledgment of, and promise to pay, this distinct old debt dating from 1904.

On the whole, the evidence offered in support of this particular claim is too vague and indefinite to establish

the fact of a recognition and promise to pay this debt by the decedent to the claimant or to his agent.

Granted that a creditor has the right to appropriate payments made by his debtor as he sees fit in the absence of a stipulation by his debtor as to which of several debts, or to what amount, credits shall be allowed: Chestnut St. Trust & Saving Fund Co. v. Hart, 217 Pa. 506; even to a debt barred by the statute of limitations: Ramsey v. Warner, 97 Mass. 8, p. 13, where it is said: "If the creditor makes the appropriation, he may do it to a debt barred by the statute of limitations; but such an appropriation will not have the effect to take the debt out of the operation of the statute. It seems to be regarded as a mere permission of law to the creditor thus to apply it, and not an intentional payment on that account, which is necessary to involve the admission of the whole debt, and the implied renewal of the promise to pay it. The debtor is not presumed to have intended to renew a promise which is no longer legally binding upon him, although he has put it in his creditor's power to satisfy pro tanto a claim upon which he had lost his legal remedy."

To remove the bar of the statute, the promise must refer distinctly and specifically to the original debt: Burr v. Burr, 26 Pa. 284; it must be unequivocal and absolute, made to the owner or in his behalf: Hostetter v. Hollinger, 117 Pa. 606. Declarations of a debtor to strangers to the transaction that he had acknowledged the indebtedness to his creditor and promised him to pay it, will not bar the statute: Spangler v. Spangler, 122 Pa. 358; the promise to pay must not be vague, shadowy or uncertain; it must be express and unambiguous: Kensington Bank v. Patton, 14 Pa. 479. The decisions of the Supreme Court apply very strict rules to acknowledgments to take a case out of the statute of limitations and are adhered to in letter and spirit: Schaeffer v. Hoffman, 113 Pa. 1. Here, as in Shaffer's Est., 228 Pa. 36, a mere general statement by the debtor

that he will settle, without more, is not an acknowledg-
ment of a debt and a promise to pay. Here, as there,
Thompson had abundant opportunity to enforce his de-
mand against Montgomery, who evidently had become a
man of means, with whom he was in constant communi-
cation and had many business transactions, and from
whom he took an acknowledgment in writing of a debt
in every other case. It was easy, prudent and vitally
essential that the claimant in this case should have bet-
ter evidences of the alleged indebtedness which he should
have acquired with diligence while the alleged debtor
was living, and not wait until his lips are sealed in death.

This claim must be disallowed for want of the clear,
explicit and unambiguous testimony indicating an ac-
knowledgment of, and promise to pay, this particular
debt. The credits allowed without authority on the
claim in 1915 and since the death of Montgomery in 1916
in the absence of an agreement that it should be applied
thereto, are not sufficient to toll the statute.

The three thousand dollar note, to the extent of two
thousand dollars and interest, is allowed.

The lower court dismissed the exceptions to the adjudi-
cation. Robert Thompson appealed.

*Error assigned,* among others, was the decree of the
court.

*Thomas S. Brown,* of *Brown, Stewart & Bostwick,* for
appellant.

*Joseph N. Houston,* with him *Edward C. Chalfant,* for
appellee.

Per Curiam, January 7, 1918:
The decree of the court below is affirmed on the opin-
ion of the learned auditing judge.