Kepperling's Estate.

Argued November 9, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*Marshall M. Cohen,* for appellant.

*G. T. Hambright,* for appellee.

OPINION BY JAMES, J., January 27, 1938:

At the audit of the account of Aaron S. Kepperling, deceased, Selina P. Shiers, appellant, presented a claim of $262 for services as a practical nurse, to decedent,

from April 1, 1935 to August 10, 1935, and an additional claim of $49.10 for sundry items. The auditing judge only allowed the claim for the sundry items and $10 for nursing from August 3 to August 10, 1935. Exceptions to the adjudication were dismissed, whereupon this appeal was taken.

On June 2, 1934, decedent became a boarder at the home of appellant, at a weekly rate of five dollars, and remained there until his death on August 10, 1935. Decedent died testate leaving an estate of $6,000, with no debts except those incident to his death and burial. He had a checking account in the bank of $100 and the balance of his estate was readily liquidated. From June 9, 1934 to August 3, 1935, decedent issued weekly checks for $5, payable to appellant and accepted by her. Some of the checks contained the following notations: "B & R," "B & Room," and "Bed & Bor." When decedent first went to appellant's home, he was in apparent good health, but some time in February, 1935, he was attended by a physician, who found him suffering from a hardening of the arteries of the brain. This doctor next treated decedent in July, 1935, when he was suffering from uremia and neurosis, and he was again called the day before decedent's death. It also appeared that, at various times, decedent had visited the office of another doctor. Between April 1, 1935 and the date of death, decedent was confined to his bed on various occasions for several days at a time. During this period, appellant at times gave decedent his medicine, particularly when he was confined to his bed; took his meals to him; gave him complete attention during the last week of his life; and cleaned his personal and bed clothing.

The proof of decedent's recognition of liability, submitted by appellant, consisted of the testimony of two witnesses, one of whom testified, in answer to a question as to whether appellant had ever requested de-

cedent to leave: "He said he didn't care to leave. He said that he would have enough loose money in the bank for to pay for the care he would make in his sickness; he made that expression several times sitting right at the table"; and the other that "she took good care of him and stuff like that; he often said there at the table if he made any person any trouble why he would pay for it, and he told her that."

In disposing of exceptions to the adjudication of the auditing judge, the court below said: "Exceptant's witnesses testified to statements by decedent that if services were required for him in sickness he would pay for them. Apparently he did not recognize such services. Claimant was a boarding-house mistress, not related to decedent by blood or marriage, and could cancel the contract at any time. It is now too late to set up a claim for services not recognized by decedent. The line of cases from *Rosencrance v. Johnson*, 191 Pa. 520, confirm the auditing judge's opinion."

Our courts have repeatedly said that claims of this nature must be subjected to the closest scrutiny, being objects of just suspicion, and must be established by evidence that is "clear, precise and indubitable": *Mooney's Estate* 328 Pa. 273, 194 A. 893. The proof does not establish that the services rendered were continuous from April 1, 1935 to the date of decedent's death, but were only occasional when decedent was bedridden, and even on this phase the proof is very indefinite. It may be conceded that proof of such extra services, by appellant, who stood in no family relationship to decedent, raised a presumption of a promise to pay, but this presumption was overcome by the proof that weekly payments, by check, had been made almost to the day of his death. Such periodic payments must be regarded as having been made in full payment of all services, especially when it appears that decedent had available funds with which to pay for such services.

To overcome this presumption, the proof was not sufficient to establish a contract for extra services; it was not clear, precise and indubitable, but, as suggested in the court's opinion, was merely a statement that he would pay for such services as he recognized worthy of payment.

Appellant argues that the facts in *Harrington v. Hickman,* 148 Pa. 401, 23 A. 1071, and *Heck v. Rettick,* 99 Pa. Superior Ct. 211 are so similar to the present case as to be controlling on the present appeal. In *Heck v. Rettick,* Judge KELLER (now President Judge) said: "In the circumstances here present they [the services] can be recovered for upon a quantum meruit: *Harrington v. Hickman,* 148 Pa. 401. The decedent's recognition of her liability and obligation to pay was quite as strong in this case as in that one. There the plaintiff recovered on proof that the decedent had said: 'Betsy is very kind to me. I have promised her that she shall be paid by my executors when I am gone for waiting on me.' In the present case it was proved that the decedent, shortly before she left for the hospital, said to plaintiff, in the presence of two witnesses: 'Em, you have never been paid for taking care of me, and when I get up and around I will pay you'; and at another time, somewhat earlier: 'If I don't pay you, Em, if anything happens to me before I pay you, you come in for your share.'" In the present case, the proof did not establish decedent's recognition of liability and his obligation to pay. In *Griffin's Estate,* 96 Pa. Superior Ct. 185, there was no proof of periodic payments.

Appellant having failed to meet the burden of proof required in claims of this character, we find no error in the dismissal of the claim.

Decree affirmed at appellant's cost.