Barr, Appellant, v. Luckenbill, Admrx.

Argued January 2, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Edward F. Hitchcock,* with him *Wallace M. Kelly* and *Kirke Bryan,* for appellant.

*Samuel A. Montgomery,* with him *Harold D. Greenwell,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, March 19, 1945:

At the conclusion of plaintiff's case the court instructed the jury to find for defendant on the ground that the claim was barred by the statute of limitations. This appeal challenges the propriety of that instruction.

On October 5, 1931, plaintiff, Raymond D. Barr, gave to defendant, R. S. Luckenbill,[1] $6,500 and on February 14, 1933, $1,000, which he was to invest for plaintiff in securities to be approved by the latter. Pending such investment defendant was to have the use of the money for his own purposes and to pay 3% interest thereon.

On January 25, 1933, defendant notified plaintiff that he had "made arrangements" to lend to one Zuber, on his note to plaintiff in that amount, $4,500 at 6% interest. Zuber was the brother of a former wife of defendant, and plaintiff was acquainted with him. Defendant stated: "this will leave me owing you 3,000,"[2] upon

---

[1] Defendant died shortly after the trial and the administratrix c. t. a. of his estate was substituted as defendant.

[2] At that time defendant had received from plaintiff only $6,500 but the remaining $1,000 was evidently in contemplation and was given to defendant some three weeks later.

which "I will still pay you 3%." Plaintiff repeatedly thereafter inquired of defendant in regard to the Zuber loan, the first time in April, 1933, and the last in the middle of 1934; he made requests for the interest and that defendant either endorse the note or obtain security for it. Defendant "most generally always" replied that he was having it "fixed up" and that "he was working on it". After February 1, 1933, defendant paid interest only on $3,000 instead of on the $6,500 as theretofore. No interest was ever received on the $4,500 loan, nor has any part of the principal been repaid by Zuber.

On July 26, 1940, defendant assigned to plaintiff two mortgages aggregating $2,687.64, and, shortly thereafter, some building and loan association stock amounting to $773.34 [3] but from which plaintiff realized, in liquidating dividends, only $208.02. Defendant, in a letter of November 14, 1940, reminded plaintiff that, after making the Zuber loan, he had retained $3,000, and that the mortgages and stock "amounts to $3460.98 for which you destroy my note of $3000 or send it back to me"; from that time on, defendant ceased paying interest on the $3,000. Plaintiff admitted in his testimony that the mortgages and the proceeds of the building and loan association stock were accepted by him in full payment of the $3,000 indebtedness.[4]

In December, 1942, defendant, summoned to the office of plaintiff's counsel, delivered to him the Zuber note of $4,500 dated February 10, 1933. Whether plaintiff accepted and retained it, or refused to receive it, is not clear from the testimony.

---

[3] There is some question whether this stock was ever actually assigned, but plaintiff received the proceeds thereof in the amount stated.

[4] He was asked: "Q. That was accepted by you in full payment of the three-thousand-dollar note, was it not? Answer 'yes' or 'no', please. A. Yes, sir." It appears, however, that no note had actually been executed by defendant for this indebtedness.

On April 2, 1943, plaintiff instituted the present suit, alleging that of the original $7,500 he had been repaid $3,460.98, leaving a balance of $4,039.02, with interest due at 3% from February 1, 1933, to July 26, 1940, on $4,500 and thereafter on $4,039.02.

The money having been given to defendant with the understanding that he was to pay interest thereon pending investment, he thereby became the debtor of plaintiff, not his trustee: *Pittsburgh National Bank of Commerce v. McMurray*, 98 Pa. 538; *Wilbur Trust Company v. Knadler*, 322 Pa. 17, 20, 185 A. 319, 321. The $3,000 which defendant retained for himself having admittedly been repaid, the only present question is in regard to the item of $4,500 (diminished, as plaintiff views the situation, by a credit of $460.98 paid in excess of the $3,000). Even if the loan to Zuber was unauthorized, defendant, by making it, repudiated any further obligation on his part for the $4,500, and plaintiff's right of action to recover that sum thereupon arose. As this occurred more than ten years before the present suit was begun, the claim would clearly seem to be barred by the statute of limitations.

Plaintiff relies on two circumstances, which, he contends, tolled the statute. The first of these was the assignment on July 26, 1940, of the mortgages and the proceeds of the building and loan association stock, which, he asserts, constituted a part payment on account of the indebtedness of $7,500 and started anew the running of the statute as of that date. But "the [constructive] acknowledgment [of a debt arising from part payment within six years before suit brought] must not only be clear, distinct, and unequivocal of the existence of a debt, but . . . it must also be plainly referable to the very debt upon which the action is based": *Burr v. Burr*, 26 Pa. 284, 285. "To take a debt out of the bar of the statute of limitations the identification of it must be made by the debtor at the time of the promise, or payment or act relied on. An identification by mere infer-

ence of the jury from other collateral matters is not sufficient": *Rosencrance v. Johnson,* 191 Pa. 520, 533, 43 A. 360, 361; *White v. Pittsburgh Vein Coal Co.,* 266 Pa. 145, 150, 109 A. 873, 875. Nor is it controlling that the payment was appropriated by the creditor to the debt for which recovery is sought; the debtor must have intended that it should be so applied: *Montgomery's Estate,* 259 Pa. 412, 417, 103 A. 223, 224. "It must plainly appear, and not be a matter of conjecture merely, that the payment relied upon was made on account of the very debt which is in dispute": *McPhilomy v. Lister,* 341 Pa. 250, 253, 19 A. 2d 143, 145. Defendant showed that he had no thought of turning over the securities to plaintiff in 1940 as part payment of any debt he conceived to be then owing by him to plaintiff. The understanding between the parties seems to have been that $3,000 of the $7,500 originally given to defendant was properly used by him for his own purposes, and that he was to continue to pay interest thereon as long as he retained this money; when he assigned the securities it was in full payment of that item and was accepted as such by plaintiff. The theory that the securities represented an overpayment on the $3,000 of $460.98 which was to be credited on account of an acknowledged remaining indebtedness of $4,500 is wholly artificial and unwarranted, for defendant at all times treated the Zuber loan as an investment made on plaintiff's behalf which released him from any further obligation as a debtor for that amount. The assignment of the securities, therefore, did not serve to delay the operation of the statute.

The second circumstance relied upon by plaintiff as having tolled the statute is the alleged concealment by defendant of the consummation of the Zuber loan. Plaintiff insists that, as the Zuber note was not actually delivered to him until December, 1942, it is from that time only that the statute should be held to have run against him. The principle is, of course, firmly established that

while "mere silence or concealment does not toll the running of the statute, . . . when the wrongdoer adds to his original fraud affirmative efforts to divert, mislead or prevent discovery, he gives to his original fraudulent act a continuing character which deprives it of the protection of the statute": *Deemer v. Weaver,* 324 Pa. 85, 88, 187 A. 215, 216. "If, in addition to the commission of an initial wrong, the wrongdoer is guilty of some act of concealment or deception, the running of the statute does not begin until discovery, or when there might have been discovery had reasonable diligence been exercised": *Ebbert v. Plymouth Oil Co.,* 348 Pa. 129, 137, 34 A. 2d 493, 497. Illustrations of such acts tolling the statute are to be found in *Morgan v. Tener,* 83 Pa. 305; *Wickersham v. Lee, No. 1,* 83 Pa. 416; and *Hughes v. First National Bank of Waynesburg,* 110 Pa. 428, 1 A. 417. But here we find no evidence of any efforts on the part of defendant to divert, mislead or prevent discovery or of any acts of concealment or deception. He gave immediate notice to plaintiff at the time he made the Zuber loan, and his subsequent statements that he "was having it fixed up" and was "working on it" were apparently in response to plaintiff's request that he should obtain security for the note. In any event, the last of the conversations between the parties was in the middle of 1934. Having been informed in 1933 that the loan had been arranged, and not having received any interest from defendant after February 1, 1933, on the $4,500 but only on the $3,000, and having resigned himself without complaint for nine years to a situation in which defendant was obviously treating the Zuber loan as having been properly effected, plaintiff cannot now be heard to say that the transaction was concealed from him until December, 1942, when the note itself was delivered to him. Certainly he did not, from any point of view, exercise the reasonable diligence required to support a claim that the statute was tolled: *Schwab v. Cornell,* 306 Pa. 536, 539, 540, 160 A. 449, 450; *Thorne's Estate,*

344 Pa. 503, 513, 514, 25 A. 2d 811, 817. Nor was there any such confidential relationship between the parties by reason either of their kinship or plaintiff's employment by defendant as would affect the operation of the statute of limitations.

There being no disputed facts, the court was justified in instructing the jury that plaintiff was too late in litigating his claim and that they should therefore render a verdict for defendant.

Judgment affirmed.