# Wickersham *versus* Lee *et al.*, No. 1.

1. The question of the fraudulent concealment of the receipt of money, on a claim placed in the hands of an agency for collection, was properly submitted to the jury upon the facts in this case.

2. When an agency is entrusted with the collection of a claim at a distant point, where its agents are undisclosed, while it is the duty of the creditor to make inquiry about his claim, it is likewise the duty of the agency to give him full and proper information in regard thereto, and should he be misled by the information thus given, within the time for the running of the Statute of Limitations, the statute will only begin to run against the creditor from the time he received knowledge of the receipt of the money by the agency.

January 31st 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county:* Of July Term 1875, No. 30.

Assumpsit by George and William Lee, executors of Wetherill Lee, deceased, the survivor of the partners of the firm of Barcroft & Co., against O. Wilson Davis and Morris S. Wickersham, late

[Wickersham v. Lee, No. 1.]

trading as Davis & Wickersham, to recover the amount of a claim against L. L. Wrother & Co., which the defendants had collected as the agents of plaintiffs.

The summons issued on the 30th of April 1870, and Wickersham was alone served, who pleaded the general issue, a denial of the partnership between Davis and himself and the Statute of Limitations. Plaintiffs joined issue on each plea except that of the Statute of Limitations, and as to it replied that the defendant collected a certain sum for plaintiffs and not only did not pay over the same, but fraudulently concealed all knowledge of the collection from the said Barcroft & Co., and refused to give them any information in regard to the same, so that the latter remained in ignorance thereof until the 22d of April 1870, when by accident they discovered that the collection had been made. The defendant rejoined and denied these allegations.

At the trial, before Mitchell, J., it appeared that in 1860, O. Wilson Davis and D. B. Birney were engaged at Philadelphia, under the firm name of Davis & Birney, in the collection of overdue claims, and, also, through their correspondents, in different parts of the United States.

On August 31st 1860, Barcroft & Co., of Philadelphia, placed in the hands of Davis & Birney, for collection, an accepted draft of L. L. Wrother & Co., of Murray, Kentucky, dated April 6th 1859, payable three months after date, for $705, and on the same day this draft was forwarded by Davis & Birney to Messrs. Bigger, Thompson & Stubblefield, their correspondents at Murray, Kentucky, for collection.

In March 1862, Morris S. Wickersham purchased all the right, title and interest of D. B. Birney in the firm of Davis & Birney, and a new copartnership was formed under the name of Davis & Wickersham, of which firm O. Wilson Davis and the said Morris S. Wickersham were the members.

Under the agreement between Wickersham and Birney for the purchase of the latter's interest in the firm, and, also, by the terms of the articles of copartnership between O. Wilson Davis and the said Wickersham, all the unsettled and uncollected claims in the custody of Davis & Birney passed into the hands of Davis & Wickersham, including in said claims the accepted draft of L. L. Wrother & Co., belonging to Barcroft & Co., of which draft there had been collected and paid over to Barcroft & Co. the sum of $152.27, leaving a balance uncollected of $555.73.

This balance, it is alleged, was subsequently collected by W. J. Stubblefield, of Bigger, Thompson & Stubblefield, and remitted to Davis & Wickersham, on the 14th of April 1863.

The remittance was in two checks, one for $398 and the other for $250 (total $648), and embraced collections on account of three claims, viz., Barcroft & Co. v. Wrother; Moss Bro. & Co. v. Wrother;

2 NORRIS—27

and Cowell, Fareira & Co. *v.* Wrother; but the letter enclosing these checks failed to state in what proportions it was to be applied to the three claims referred to.

The receipt of the checks was noted in the regular cash-book of Davis & Wickersham, and, also, in the petty cash-book kept by M. S. Wickersham, defendant below. A letter was addressed to W. J. Stubblefield, the attorney at Murray, Kentucky, asking for a statement showing how the amount was to be distributed, and the letter containing the check placed upon a file set apart for papers requiring explanation, until the statement from Stubblefield should be received.

No such statement was ever received by Davis & Wickersham, the proportion of the remittance due Barcroft & Co. was not ascertained or paid to them, and no notice was given to them of the receipt of the checks.

On April 20th 1863, Davis & Wickersham sold and transferred to William W. Ledyard and William M. Barlow their business, so far as it included the collection throughout the country of claims past maturity.

Under the agreement of sale, Davis & Wickersham retained the ownership of all their books, dockets and papers, but gave to Ledyard & Barlow the use and possession of them for a period of five years, to enable them to properly continue and carry on the business.

Notice of the purchase by Ledyard & Barlow from Davis & Wickersham, and of the transfer from the latter to the former of the collection business and the unsettled claims which had been in the hands of the latter, was given to Barcroft & Co. about May 1st 1863. Shortly thereafter Mr. Wickersham went to Europe.

Barcroft & Co. subsequently, from time to time, applied to Ledyard & Barlow for a statement of the condition of their claims, including that against L. L. Wrother & Co., and received from them replies in writing. Two only of these written replies were offered in evidence, one dated November 30th 1864, which gives the answer to the inquiry as to claim against L. L. Wrother & Co. "regarded as good," and the other dated March 1869, "not much hopes."

In March 1870, Barcroft & Co. wrote to W. J. Stubblefield, who, they had been informed by Ledyard & Barlow, had charge of the collection of this claim, asking him to account to them only for the claim, and received from him the reply that he had paid and overpaid their attorneys the L. L. Wrother & Co. claim. Upon this information, which, it is alleged, was the first notice they had received of the collection of the money, Barcroft & Co. instituted this suit against defendant in April 1870.

The following points were submitted by the defendant:—

1. That there is no evidence of fraud on the part of the defend-

[Wickersham *v.* Lee, No. 1.]

ant Wickersham to take the case out of the Statute of Limitations, and therefore the verdict must be for the defendant.　2. That Dr. Wickersham's omission to give notice of the receipt of the money from April 14th 1863 to May 1st 1863, during which interval he continued in the firm of Davis & Wickersham, is not such evidence of fraud on his part as to take the case out of the Statute of Limitations, and the verdict must be for the defendant.　3. That if it were the duty of Ledyard & Barlow to notify Barcroft & Co., their omission to do so is no evidence of fraud on the part of Davis & Wickersham so as to take the case out of the Statute of Limitations; and the verdict, even in that view, must be for the defendant.

To which the court answered:—

"All these points are refused, because they include a binding direction to find for the defendant.　I leave the question of fraud to the jury as a question of fact, under the instructions already given."

The court charged the jury: "Under ordinary circumstances, the lapse of six years is a bar to a claim, but [if there was a fraudulent concealment, then the law will not allow any person committing that fraud to take advantage of it; and if that fraud has been proved to you in this case, then the lapse of time is not a good defence.]

"[Now, the only question which you have to consider in this case is, whether or not the failure of Davis & Wickersham to pay over that money to Barcroft when it was collected in 1863, was a fraudulent concealment of the collection with an intent to appropriate the money, or whether it was one of those accidents which are perhaps incident to all human business, and for which they were not responsible after six years.]

"Now, it was undoubtedly the duty of the defendant to pay over that money promptly, as soon as they ascertained the amount payable to Barcroft & Co.　The plaintiff argues to you, from the neglect of that duty, which is conceded, that there was an intent to conceal the fact of the collection.　On the other hand, it is argued to you by the defendant that, as no information was given by Stubblefield in that first letter as to the proportion of this money to go to each of these claimants, therefore no entry was made in the docket upon this claim, because it could not be divided, because they could not say how much of this money was due to that particular claim, and they omitted to enter it in the docket on that account; but they entered it in the cash-book and petty cash-book, and that the subsequent failure to enter it in the docket and the ledger was one of those accidents of business which was unavoidable when the change in the partnership took place, sixteen days afterwards.

"[Now, that is the whole question you have to consider.　If you find that this was a fraud, that there was an intention to conceal

[Wickersham *v.* Lee, No. 1.]

the collection of this money, then you will find a verdict for the plaintiff for the sum which ought to have been paid over, with interest to the present time.]

"If you find it was a mere accidental omission, not with an intention to conceal, then the lapse of time is a good defence, and you should find a verdict for the defendant."

The verdict was for the plaintiffs for $981.95. Judgment was entered on this verdict, and the defendant took this writ, assigning for error the refusal of defendant's points and the foregoing poitions of the charge in brackets.

*James E. Gowen, George M. Dallas* and *D. R. Patterson*, for plaintiff in error.—The Statute of Limitations applies to a collection of money by an attorney for his client, and it commences to run as soon as the right of action accrues, viz., when the money is received, or within a reasonable time thereafter, or at the utmost, when the relation of attorney and client is dissolved, as in this case did occur about seven years prior to suit brought, and only a few days after the collection was made: Glenn *v.* Cuttle, 2 Grant's Cases 273; Campbell's Administrator *v.* Boggs, 12 Wright 524; Rhines's Administrator *v.* Evans, 16 P. F. Smith 192; Barton *v.* Dickens, 12 Wright 518.

The only qualification to this general rule is, that where the attorney fraudulently conceals the collection by giving false or evasive answers to his client, the statute begins to run at the time when the fraud is discovered; but the *onus probandi* to take the case out of the statute is on the plaintiff.

The evidence was not sufficient to submit to the jury on the question of fraud: Baisch *v.* Oakeley, 18 P. F. Smith 92; Howard Ex. Co. *v.* Wile, 14 Id. 201; Corn Exchange Bank *v.* Bank of Republic, 28 Id. 233; 1 Greenleaf on Evidence, sect. 80.

*Ludovic C. Cleemann* and *George Sergeant,* for defendants in error.—There was sufficient evidence of a fraudulent concealment of the collection of the money to go to the jury so as to stop the running of the statute: Garrett *v.* Jackson, 8 Harris 336; Dingee *v.* Jackson, 11 Id. 177; Huntzinger *v.* Harper, 8 Wright 204; Campbell's Administrator *v.* Boggs, 12 Id. 524; Rhines's Administrators *v.* Evans, 16 P. F. Smith 192.

An examination of the cases cited by the plaintiff in error shows that the Statute of Limitations was passed to promote diligence on the part of the creditor, and that any act of the debtor causing delay on the part of the creditor, or misleading him, will stop the running of the statute.

The judgment of the Supreme Court was entered February 12th 1877,

[Wickersham v. Lee, No. 1.]

PER CURIAM.—The case of the plaintiff was, that his firm had placed their claim against a distant debtor in the hands of a collection agency, which forwarded it to an attorney in a distant state for collection. He collected and transmitted the money to this agency. The partner who received it gave no notice to the creditors of the receipt of the money, did not note its collection upon the docket, where the receipt should appear, sold out the business to another firm, which took their place and their books without notice of the receipt, and was therefore unable to give the desired information to the creditors, who called frequently to ascertain the state of the claim, and were informed first, that it was good, and finally, that it was hopeless. Now, without explanation, this statement of the plaintiff's case would leave a very strong impression upon the mind that the money was purposely kept, and its receipt concealed from the creditors. Clearly these circumstances were to be submitted to the jury as evidence of an intentional concealment of the receipt of the money. But when the explanation came, fortunately for the reputation of the gentleman who received the money, a different case was presented. Then it appeared that in consequence of the meagre contents of the letter transmitting the money, this gentleman had to suspend his entries, and write for further information, which was not returned by the distant correspondent, and within three weeks this gentleman went abroad. Hence it was not error to submit the question of wilful, in other words, fraudulent, concealment of the money, to the jury. They have found the fact in favor of the plaintiff and this is sufficient for the case. But, independently of actual fraud, we hold that in such a case as this, where a collection agency is entrusted with a discretion as to the collection, by law or otherwise, of a distant claim, having its own undisclosed agents, there is a duty to give full and proper information to the creditor who has no other means of knowledge, and therefore if the creditor calls from time to time within the time of the running of the Statute of Limitations, and receives from his agents' information by which he is misled, the Statute of Limitations does not bar his action before knowledge of the receipt of the money by them. So long as they give him to understand that his claim is uncollected he is put off his guard. The duty of inquiry lies on him, but having made inquiry of his agents and being misinformed by them, they cannot set up the statute, when they have misled him, and thereby induced him to delay his action.

We see no error in this record.

Judgment affirmed.