## Smith v. Blachley.   McCullough v. Blachley.

198    173
f 22 SC ²469

198    173
23 SC ²563

198    173
f 36 SC ¹310

*Statute of limitations—Fraud—Discovery of fraud—Concealment.*

In an action based upon a fraud, the statute of limitations will run from the date of the fraudulent act complained of, unless such fraud has been actively concealed by the defendant.

The cases which hold that where fraud is concealed or as sometimes added, conceals itself, the statute runs only from discovery, practically repeal the statute pro tanto. Fraud is always concealed. If it was not, no fraud would ever succeed. But when it is accomplished and ended, the rights of the parties are fixed. The right of action is complete. If plaintiff bestirs himself to inquire, he has ample time to investigate and bring his action. If both parties rest on their oars, the statute runs its regular course. But if the wrongdoer add to his original fraud, affirmative efforts to divert or mislead or prevent discovery, then he gives to his original act a continuing character by virtue of which he deprives it of the protection of the statute until discovery. Per MITCHELL, J.

In an action to recover money obtained by gross fraud and deception as to an alleged threatened prosecution for crime, where it appears that although the defendant used all possible efforts to prevent plaintiffs from finding out the truth, yet all such efforts were in the transaction itself and prior to its consummation, and nothing was said or done by defendant after the transaction bearing in any way on investigation, and plaintiffs could have discovered the fraud at the time of its commission or shortly thereafter if they had started an investigation, the statute of limitations will run from the date of the fraudulent transaction, and not from the date of its discovery.

Argued Oct. 24, 1900. Appeals, Nos. 106 and 107, Oct. T., 1900, by defendant, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1896, Nos. 18 and 74, on verdict for plaintiffs in cases of John H. Smith and James M. Burroughs, executors of Joseph Beabout, deceased, v. Oliver L. Blachley, and John McCullough v. Oliver L. Blachley. Before McCOLLUM, C. J., MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Assumpsit for money had and received.    Before KENNEDY, P. J.

At the trial it appeared that in 1888, plaintiffs paid to defendant the sum of $3,000 for the purpose of preventing the bringing of an alleged criminal prosecution against them and different members of their family, on the charge of procuring an abortion on the daughter of one of the plaintiffs.    The evidence tended to show gross fraud and deception in the transaction itself, but there was no evidence that after the transaction was complete defendant did anything or said anything to prevent investigation.    If the plaintiffs had started an investigation at the time, they could have discovered the fraud.    The circumstances under which the fraud was consummated are stated in the previous report of the case, in 188 Pa. 550.    Defendant claimed that the action was barred by the statute of limitations, and requested binding instructions in his favor.    Such instructions were refused.

Verdict and judgment for plaintiff for $5,081.    Defendant appealed.

*Error assigned* among others was in refusing binding instructions for defendant.

*J. S. Ferguson*, with him *E. G. Ferguson*, for appellant.—
The ruling that fraudulent concealment of a cause of action on the part of a defendant may lift a case out of the statute of limitations and deprive him of its protection, is of equitable origin, and is more liberally applied in equity than in law. But neither in equity nor at law will mere silence or concealment check the operation of the statute.    Neither concealment of the fraud nor fraud without concealment is sufficient: Bank of Hartford Co. v. Waterman, 26 Conn. 324; Campbell v. Boggs, 48 Pa. 524; Sankey v. McElevey, 104 Pa. 273; Wood on Limitation of Actions, sec. 274; Gibbs v. Guild, L. R. 9 Q. B. D. 59; Wilmerding v. Russ, 33 Conn. 67; Glenn v. Cuttle, 2 Grant's Cases, 293; Fleming v. Culbert, 46 Pa. 499; Walker v. Soule, 138 Mass. 570; Brown v. Edes, 37 Maine, 318; Deake, Appellant, 80 Maine, 50.

*Franklin P. Iams*, with him *C. C. Brock*, for appellee.—

Blachley cannot be permitted to set up the statute of limitations as a defense in these cases, because of his fraud and concealment, and because by his fraud and false pretenses he made himself a trustee ex maleficio of the money received by him for the benefit of plaintiffs : Philadelphia v. Brown, 19 Phila. 379 ; Bricker v. Lightner, 40 Pa. 199 ; Mitchell v. Buffington, 10 W. N. C. 361 ; Pennock v. Freeman, 1 Watts, 410 ; Harrisburg Bank v. Forster, 8 Watts, 12 ; Bartholemew v. Leech, 7 Watts, 472 ; Ferris v. Henderson, 12 Pa. 49.

OPINION BY MR. JUSTICE MITCHELL, January 7, 1901 :

The general rule that statutes of limitation run from the act complained of in cases of tort as well as of contract, admits a well settled exception on account of fraud.    The exception was not originally in the statutes themselves but was introduced by the courts acting upon principles of equity, though in many states (not, however, including Pennsylvania) the statutes have now been framed to cover and define the excepted cases explicitly.

But the limits of the exception and the circumstances under which it will be permitted have led to much conflict in the authorities.    It is said in general that in cases of fraud the statute runs only from discovery, or from when with reasonable diligence there ought to have been discovery.    But a distinction is made in regard to the starting point of the statute between fraud completed and ending with the act which gives rise to the cause of action, and fraud continued afterwards in efforts or acts tending to prevent discovery.    On this distinction there are two widely divergent views.    It is held on the one hand that the fraud though complete and fully actionable, nevertheless operates as of itself a continuing cause of action until discovery, while on the other hand it is held that when the cause of action is once complete the statute begins to run, and suit must be brought within the prescribed term, unless discovery is prevented by some additional and affirmative fraud done with that intent.

The United States courts have adopted the first view in treating the limitation of actions in the bankruptcy acts : Bailey v. Glover, 88 U. S. 343 ; Traer v. Clews, 115 U. S. 528.    On the other hand in Troup v. Smith's Exrs., 20 Johns. 33, it was

held that in a court of law the statute runs from the act "whether
there was a fraudulent concealment or not so as to prevent the
plaintiff discovering the fraud," and Chief Justice SPENCER
said that even in a court of equity the plaintiff must fail "as
the concealment of the fraud is not imputed to the testator.
What he did was visible and what he neglected to do would or
might have been discovered by repairing to the land." This
view appears to be still held in New York: Miller v. Wood, 116
N. Y. 351, and in other states. In many states, however, the
decisions are so influenced by statutory provisions that they
afford us little light on the subject as governed by the common
law.

In England as late as 1882, the Queen's Bench Division dif-
fered on the question. In Gibbs v. Guild, L. R. 8 Q. B. D. 296,
the plaintiff declared for fraud by which he was induced to pur-
chase stock which was worthless, and to the plea of the statute
he replied that the defendant, in order to prevent the discovery
of the fraud, had "actively and deliberately concealed the same,"
etc. On demurrer, FIELD, J., gave judgment for the plaintiff,
noticing specially this averment in the replication. On appeal
the judgment was affirmed by two justices to one dissenting.
The majority stated their conclusions in very broad terms with-
out adverting to the replication and thereby leaving some doubt
as to how far it was considered as material: Gibbs v. Guild,
L. R. 9 Q. B. D. 59.

In Wood on the Limitation of Actions, the general rule is
stated thus : " The cause of action, except when the statute other-
wise provides, in cases of fraud, arises from the time of its com-
mission : " Sec. 275. " Something more than mere silence is
necessary unless the relationship of the parties is such that the
party is bound to speak ; it is necessary that some effort to con-
ceal the fraud should have been made, either by preventing an
investigation or by misleading the party making inquiry, or
that misrepresentations were made by the party which were cal-
culated to mislead him. In other words some affirmative acts
to conceal the fraud must be shown." Wood, sec. 276.

And in Darby & Bosanquet on Statutes of Limitations (2d ed.),
46, it is said, " In an action of deceit the statute will run from
the date of the fraudulent act complained of, unless such fraud

has been actively concealed by the defendant," referring to Gibbs v. Guild, L. R. 9 Q. B. D. 59, already cited, supra.

The cases in this state are not in harmony, and it is doubtful if they can be altogether reconciled, the difficulty being that the earlier ones were decided without reference to the distinction now under consideration. Jones v. Conoway, 4 Yeates, 109, was an action on the case as for deceit for selling plaintiff a negro man as a slave, and the court held that the statute only ran from the discovery of the fraud by the negro claiming and obtaining his freedom. Ferris v. Henderson, 12 Pa. 49, was a bill by a former slave for the value of his services, after he had become free by the failure to register him, and it was averred that the master by fraudulent concealment and threats had kept him in ignorance of his rights. The lapse of time was thirty-six years, and LOWRIE, J., in the district court of Allegheny, dismissed the bill as too late. This court, however, reversed on the ground that the statute runs only from discovery of the fraud, and also fortified itself by taking into account the plaintiff's condition of servitude and habit of submission. In Bricker v. Lightner, 40 Pa. 199, the defendant had given notes for money which he owed, and on the morning after the death of his creditor had stolen the notes from the desk where they were kept in the decedent's room. It was held that the statute was no bar. All of these cases however were of the hard kind that are said to make bad law, and all of them were decided on the general proposition that in cases of actual fraud the statute runs only from discovery without any reference in any of them to the principle requiring affirmative acts of concealment after the fraud is complete.

On the other hand it has been repeatedly held that in an action against an attorney in fact or at law, to recover money collected and embezzled or not paid over, the statute runs from the date of collection and not from the time of discovery, unless the plaintiff has been misled or induced to delay by misrepresentations subsequent to the collection. In Glenn v. Cuttle, 2 Grant, 273, a case much quoted and relied on (also reported in 48 Pa. 524, as Campbell v. Boggs), it was held that the statute was a bar, and the principle was indicated, though not distinctly announced, that the rule would be different in case of subsequent active misrepresentations. In Fleming v. Culbert,

46 Pa. 498, nowever, it was expressly stated by the same judge who had written the opinion in Glenn v. Cuttle, that the statute runs from the collection, " but if there be fraudulent concealment on the part of the attorney, as for example, if he gave false or evasive answers to the inquiries of his client or principal, the statute begins to run only from discovery of the fraud." Subsequent cases of that class have all been decided expressly on that distinction which is now firmly settled : Morgan v. Tener, 83 Pa. 305; Wickersham v. Lee, 83 Pa. 416; Hughes v. First Nat. Bank of Waynesburg, 110 Pa. 428.

In the recent case of Sankey v. McElevey, 104 Pa. 265, this subject was very fully considered in an opinion by the late Chief Justice GREEN. After referring to Bricker v. Lightner, Ferris v. Henderson and Wickersham v. Lee, supra, he cites Troup v. Smith, 20 Johns. 33, supra, and other cases with the comment that " even in courts of equity we apprehend that there must be some relation of trust or confidence between the parties imposing a duty to give information or some affirmative act of fraud, something more than mere silence which will suffice to defeat the operation of the statute where the basis of the reply to the statute is concealment of the cause of action," and quotes with approval the language of Wood on the Limitation of Actions, sec. 276. " The provision that if a person, liable to an action, shall conceal the fact from the knowledge of the person entitled thereto, the action may be commenced at any time within the period of limitation after the discovery of the cause of action applies to causes of action for fraud as well as to other causes of action ; but the concealment contemplated by the statute is something more than mere silence ; it must be of an affirmative character and must be alleged and proved so as to bring the ease clearly within the meaning of the statute."

And in Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co., 167 Pa. 136, our late Brother WILLIAMS says : " What an owner might know if he was personally present by himself or his employees on the surface of his possessions, he is bound to know unless his attention is diverted by the fraudulent artifices of the wrongdoer. Silence or concealment will not prevent the running of the statute," citing Sankey v. McElevey, supra.

From this examination of our cases it is clear that while the

earlier ones were decided without reference to the distinction under discussion, yet from the recognition of it in Glenn v. Cuttle, the uniform trend of the decisions has been towards its approval and establishment, and in no case since then has it been disregarded. How far the application of it would have modified the decisions in the earlier cases we need not now consider. In Bricker v. Lightner, for instance, it might be that the continued possession and concealment of the stolen notes should be regarded as a continuous fraud so that the statute would only run from discovery. Such questions we must leave to be determined when they arise. We regard the distinction as sound, well marked and in harmony with the spirit and letter of the statute. The cases which hold that where fraud is concealed or as sometimes added, conceals itself, the statute runs only from discovery, practically repeal the statute pro tanto. Fraud is always concealed. If it was not no fraud would ever succeed. But when it is accomplished and ended, the rights of the parties are fixed. The right of action is complete. If plaintiff bestirs himself to inquire, he has ample time to investigate and bring his action. If both parties rest on their oars the statute runs its regular course. But if the wrongdoer adds to his original fraud, affirmative efforts to divert or mislead or prevent discovery, then he gives to his original act a continuing character by virtue of which he deprives it of the protection of the statute until discovery.

Tried by this test the present actions must fail. When the cases were here before, 188 Pa. 550, our Brother DEAN said: " There was ample evidence, if believed by the jury, that defendant had by systematic falsehood and artifice not only concealed the fraud but for a long time had deterred his employers from inquiry. Under such circumstances the plea will not avail him" and so it appeared to the court at that time. But the cases were argued mainly on the right of the plaintiffs as particeps criminis to maintain the action. The opinion was chiefly devoted to showing that defendant, having received the money as agent of the plaintiffs to pay it over, could not shield himself from liability for not doing so, on the ground of the illegality of the original transaction. On the record as now presented the question is entirely different. There is no evidence to show that after the transaction was complete by the receipt of the money,

the defendant ever did anything to prevent inquiry. The only act alleged is the representation that he had paid $5.00 to Sayers for drawing the papers. But this had no tendency to deter investigation. It was rather an additional clue by which plaintiffs, if they had been diligent, could have tested the truth of the whole story. It is true that defendant obtained the money as the jury have found, by a scheme of the grossest fraud and deception, and used all possible efforts to prevent plaintiffs from finding out the truth, but all these were in the transaction itself and prior to its consummation. There was nothing said or done by him after that bearing in any way on investigation, and plaintiffs knew no facts in 1895, when they brought suit which they did not know in 1888. The gradual leaking out of the circumstances and the gossip and suspicions of others started an investigation by plaintiffs, which the most ordinary prudence would have prompted at the beginning, and which would then have either foiled the scheme or led to its discovery, and the trial of this action while all the witnesses were alive and the matters fresh in their memories. As it is now the evidence is so meager that one jury has disagreed upon it, and another has decided it on oath against oath with very little collateral evidence to help out either, an illustration of the very evil the statute of limitations was intended to prevent.

Judgment reversed.