# Franklin, Appellant, *v.* Franklin.

*Statute of limitations—Fraud—Discovery of fraud—Evidence.*

In an action of assumpsit begun in 1898 it was not clear whether the cause of action originated in 1852 or 1857.   The evidence tended to show that plaintiffs and defendant, who were brothers, met in 1857 after the death of their mother, and made an amicable partition of their father's and mother's estate.   Defendant took his share.   In 1898, plaintiffs discovered a deed from defendant to his mother for his interest in the land. The deed could have been easily discovered amongst the mother's effects, if any search had been made immediately after her death.   Defendant remained silent as to the transaction of 1852, and apart from this did nothing to secrete the transaction.   In 1898, two of the plaintiffs produced the deed to defendant, and testified that he promised to pay back the money, but it was uncertain whether the defendant referred to the money received by him in 1852, or the money received in 1857.   *Held*, that the trial judge properly instructed the jury that both the evidence and the alleged fraud were insufficient to overcome the plea of the statute of limitations.

Argued Jan. 17, 1903.   Appeal, No. 88, Jan. T., 1904, by plaintiffs, from judgment of C. P. Luzerne Co., on verdict for defendant in case of William A. Franklin et al. v. Lafayette Franklin.   Before BEAVER, SMITH, W. W. PORTER, W. D. PORTER and MORRISON, JJ.   Affirmed.

Assumpsit for money had and received.   Before FERRIS, J.

The court charged as follows :

This action is brought by William A. Franklin and Evan Franklin, and pursuant to certain amendments of the record, by John F. Trumbauer, Frances Ellen Trumbauer, Isaiah A. Trum-

bauer, Edward Trumbauer and Anna Bell Trumbauer, children of Mary Trumbauer, deceased, who was formerly a daughter as Mr. William A. Franklin and Mr. Evan Franklin are sons of the late William Franklin; also the amendments have included the husband of Mrs. Trumbauer as a plaintiff. The action is brought against Mr. Lafayette Franklin, who is another son of the late William Franklin, deceased. The cause of action, as stated in the plaintiff's statement of claim, which is the first thing which the plaintiff does after directing the summons, is stated to be an indebtedness of $2,422, which sum includes principal and interest owing from the year 1857 down to the bringing of the suit, "money had and received by the defendant, the same being the money of the plaintiffs aforesaid," which money the defendant, in the spring of 1898, agreed to pay to the plaintiffs, but has failed to keep his agreement, and therefore the suit is brought. That, briefly, is the plaintiff's statement of the case. The cause of action, as it has been developed by the testimony, grows out of a family agreement entered into by the sons and daughter of William Franklin subsequent to the death of William Franklin and subsequent also to the death of his widow, Ann. The parties to that agreement, as shown by the evidence, were Mr. William A. Franklin, Mr. Evan Franklin, Mrs. Mary Trumbauer, Mr. Leonard Franklin, now deceased, and Mr. Lafayette Franklin. It is developed by the testimony that the real cause of action set up by the plaintiffs is that previous to this family agreement of 1857, namely, in March, 1852, during the lifetime of Mrs. Franklin, the elder, Lafayette Franklin, the defendant here, sold and transferred to his mother all his interest in his father's estate; that having so transferred his interest in his father's estate to his mother, he nevertheless assumed to enter into with his brothers and sister this family agreement which contemplated a division of the father's estate and also of the mother's estate, among the heirs entitled to it; he assuming to be an heir entitled whereas he in reality was not so entitled so far as his father's estate was concerned, and that he taking that position and failing to acquaint his brothers and sister with the fact that he had previously conveyed his interest in his father's estate to his mother, and further his acceptance of the status of a still existing heir of his father, one to whom money was still due as

part of his father's estate, he therefore committed a fraud upon his brothers and sister. It is claimed that the money which he received pursuant to that family settlement was fraudulently obtained by him by reason of this concealment and that it was in reality the money of the plaintiffs. The proof would seem to indicate that it was not only the money of the plaintiffs, but also the money of Leonard Franklin, unless the testimony that is alluded to by the plaintiff's counsel in the recent argument would satisfy the jury, if the jury were to pass upon it, that Leonard's interest had passed to Mr. Evan Franklin previous to the time of bringing this suit. If that were true, then the failure to bring in Mr. Leonard Franklin's representatives or heirs would not be a material matter since at the time of the beginning of the suit they had no interest.

This cause of action, as set forth by the statement, then is alleged to be an indebtednes of $2,400, including interest, indebtedness having its rise in 1857, at the time of this family agreement. As developed in the testimony it is claimed to be money fraudulently had and received by the defendant, also in 1857. What I now call your attention to is the lapse of time that has occurred from the beginning of the cause of action to the beginning of the actual suit. Most business men are familiar, in a general way at least, with the statute known as the statute of limitations. So far as it relates to a claim for money, whether by a contract debt or arising through fraud, that is, a liability to pay arising through fraud, the action under this statute to recover the money must be brought within six years after the right of action accrued. It is, however, a principle of law that even after the six years had expired, the bar, as it is called of the statute of limitations, may be removed by an acknowledgment of the indebtedness and the promise to pay, which the law requires to be very explicit. Such an acknowledgment must be unqualified. It must be consistent with a promise to pay on demand. It must not be accompanied by such other expressions as indicate a willingness to pay at some future time. No acknowledgment less than this will toll the statute. The language should be so clear as to preclude hesitation as to the debt or its meaning. It is not necessary to speak to you as to any other method of removing the bar of the statute of limitations as, for example, by partial payment of the indebt-

tedness, as those other methods do not come into consideration here. The question, and indeed the crucial question in this case, is whether or not there was such an acknowledgment and promise to pay an indebtedness of Lafayette Franklin to the plaintiffs in this case as would sufficiently identify the debt (which must be done) and sufficiently promise to pay it within the principle of law which I have just stated to you. Upon that subject we have the testimony of Mr. William Franklin and of Mr. Evan Franklin. William Franklin says, relating to a conversation said to have occurred between William, Evan and Lafayettee in the lane at the farm of Lafayette, and said to have occurred in March, I believe, in the year 1898 : " Evan asked him (that is Lafayette) if he did not remember getting money of his mother. He dropped his head and he says I do. And then I had the paper there (being the paper said to have been executed by Lafayette giving his heirship to his mother), and I showed it to him, and he said it was his signature, he had got that money. He read a portion of it so as to understand it. Then he says I got that money and I will pay it. He says to Evan, my brother, he says can that be settled without any trouble. Why, yes, he thought it could. He says how. Evan says by paying the principal and interest. I will pay it. He said he would give the money he had and his note for the balance. He said the amount was large, he said it was pretty rough but he says I have got it and I will pay it. He said that paper slipped his mind when he settled with me in '57, but now he remembered all about it when he came to see it. He said if it had not slipped his mind he needn't signed any article of agreement when he did, that he got every dollar he expected to get from the place. The money that he said he would pay was the money which I paid him in '57, that was the money he had reference to." I do not think, gentlemen, that this shows such an acknowledgment of an existing indebtedness by Lafayette to the plaintiffs in this case equivalent to a promise to pay the same on demand as would satisfy the law and would remove the bar of the statute. The testimony of Mr. Evan Franklin, relating to the same occurrence, is : " William hitched the horse, and I went up ahead to Lafayette. And William came, and until he came I talked about different matters, and when William came I asked him if he remembered

getting the money from his mother. He kind of dropped his head and he said he did. And by that time William had that paper out and showed it to him and he looked it over, and he admitted that paper and it was his signature he said on that paper. He read it and he said right there, he says I remember of getting money from my mother. He said I will pay all the money I have got and I will give my note for the balance, I don't want you to make me any trouble. He asked me how I thought— how he thought William would settle it. I told him I thought by paying the principal and interest. He said he would pay it. He said I will pay all the money I have got and I will give my note for the balance, I will pay it and I don't want any trouble. He spoke about the amount being large. I don't know but he said he would have to sell the farm or something, but he spoke about it. He felt anxious thinking he would make him trouble about it, he felt anxious, he didn't want any trouble, he said he didn't want any costs made." We say as to this testimony practically as we said with regard to that of Mr. William Franklin. We do not think that this testimony of either Evan or William is sufficient to bar the statute of limitations in this case. We do not think, in the first place, that it is an unequivocal admission of owing the debt (which is sued for here by the plaintiffs) to the plaintiffs. We do not think, on the other hand, that it is a clear, precise, unequivocal statement equivalent to a promise to pay an indebtedness to the plaintiffs because it was an indebtedness, and not because he feared some trouble might be made by reason of his having received money from his mother.

Your verdict should be for the defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Edmund G. Butler*, with him *T. R. Martin*, for appellant.

*William S. McLean*, with him *George R. McLean*, for appellee.

OPINION BY MORRISON, J., March 12, 1903:

This is an attempt to recover in an action of assumpsit on a

cause of action which originated more than forty years before the commencement of the suit. Under the very meager and unsatisfactory declaration and the testimony in regard to the cause of action, there is a serious dispute between the counsel for the appellants and for the appellees as to whether the cause of action referred to in the declaration, and by the witnesses whose testimony it is argued tends to toll the running of the statute, originated in 1852 or 1857. The learned court below was of the opinion, and so charged in clear and explicit language, that if the cause of action originated in 1857 there was nothing in the testimony of the witnesses sufficient to toll the statute on account of what it was alleged the defendant admitted in 1898. The learned judge was of the opinion, and so charged, that the alleged fraud perpetrated by the defendant, assuming that it was in 1857, was complete at that time, and there is not a scintilla of evidence tending to show any active fraud on the part of the defendant from that time down to the bringing of this suit. All that he did, so far as the evidence shows, was to remain silent in regard to the money which he received from his mother for his interest in the estate in 1852. A careful examination of all of the evidence fails to satisfy us that the promises, or admissions made by the appellee to his brothers in March, 1898, were sufficient to toll the statute as against the cause of action arising in 1857. Indeed, it is doubtful whether he referred at all to the money which he received in 1857. The learned counsel for the appellee contends strongly that the money which Lafayette Franklin admitted having received, and which he talked about repaying if he was able, was the money received from his mother in 1852. And confessedly, this is not the money sued for by the plaintiffs. Their claim appears to be for the money paid to Lafayette Franklin in 1857 for his interest in his father's and mother's estate. The appellants rely on the testimony of William and Evan Franklin, two of the appellants, to establish the fact that at this time (in 1898) Lafayette admitted owing the money received in 1857, and promised to pay it. We do not think it at all clear that this testimony tends to support this theory. On the contrary, it seems to us that it refers to the transaction of 1852. But in any view of it we do not think the court erred in holding that it was insufficient to toll

the statute of limitations.   The remaining question is, was the transaction of 1857 fraudulent, and if so, was it so concealed by Lafayette Franklin that the statute did not begin to run until its discovery in 1898?   We have already said that there is not a scintilla of evidence showing or tending to show any word or act of Lafayette Franklin after 1857, tending to secrete this fraud.   He simply remained silent.   The conveyance he had made to his mother in 1852 was in her possession, among her papers, and a very moderate amount of diligence would have enabled this family, or any member of it, after their mother's death, to have discovered this conveyance.

The appellants have cited a large number of cases, and have made an elaborate argument upon the question of the concealed fraud tolling the statute of limitations.   But in our judgment the case is ruled by Smith v. Blachley, 198 Pa. 173.   We think this case fully sustains the learned judge in the court below in instructing the jury that both the evidence and the alleged fraud were insufficient to overcome the plea of the statute of limitations.   The assignments of error are all overruled and the judgment is affirmed.