## Cloyd *v.* Reynolds, Appellant.

*Practice C. P.—Parties—Death of plaintiff—Substitution of executors —Will.*

1. Where in an action of assumpsit the plaintiff dies, and his executors are substituted in his place, and the death of the plaintiff and the issue of letters testamentary are admitted, it is not necessary to produce the will in evidence to establish the right of the executors to prosecute the suit to final judgment.

*Principal and agent—Agency to sell—Fraudulent concealment of sale— Evidence.*

2. When a principal sends a horse to an agent to sell, and the latter sells the horse, but not only conceals the fact of the sale from the principal, but also attempts to make the principal believe that the horse had been killed, and the principal does not learn these facts until he is barred by the statute from bringing suit against the purchaser, the statute of limitations does not run in favor of the agent as against his principal from the date of the sale of the horse, but only from the discovery of the fraud. In such a case evidence that the agent had not in fact been paid for the horse is immaterial, and it is also immaterial that a new agreement was substituted for the original agreement, after the sale of the horse, if it appears that the principal entered into the new agreement without knowledge of the fraud and concealment which had been practiced upon him; and it is also immaterial in such a case whether the purchasers of the horse were solvent or insolvent.

Submitted Oct. 30, 1912.  Appeal, No. 214, Oct. T., 1912, by defendant, from judgment of C. P. Huntingdon Co., May T., 1908, No. 23, on verdict for plaintiffs in case of Mary B. Cloyd, Executrix, and Roger Martin, Executor of the last will and Testament of D. M. Cloyd, deceased, v. H. P. Reynolds.  Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.  Affirmed.

Assumpsit to recover the value of a horse. Before JOHNSON, P. J., specially presiding.

The facts appear by the opinion of the Superior Court, and by the former report of the case in 44 Pa. Superior Ct. 81.

At the trial the court under exception refused to admit in evidence the books of Trexler Bros. & Co. to show that the latter had not paid the defendant for the horse in question. [2]

The court charged in part as follows:

[You will notice that the suit is brought in the name of Mary B. Cloyd, executrix, and Roger Martin, executor, and D. M. Cloyd has not long ago died. It is admitted in the case by the defendant that this executor and this executrix have been properly appointed and have been made proper parties to this suit, they stand in the place of the deceased D. M. Cloyd who is claimed to have delivered this horse in question to H. P. Reynolds, the defendant in this case.] [1]

Plaintiff presented these points:

2. In case of fraud the statute of limitations does not begin to run until after the discovery of the fraud, and if the jury believe that the defendant concealed from the plaintiff the fact that he sold the horse in question to Trexler Brothers & Company on February 4, 1902, and the plaintiff did not acquire knowledge of such sale until March 4, 1908, the plaintiff is entitled to recover and the verdict of the jury should be for the plaintiff. *Answer:* We affirm this point along with the first one, and state to you as we have stated in the charge that if there was any concealment, a fraudulent concealment of this sale of this horse and that the horse was sold for $700 to Trexler Brothers & Company, then the verdict should be in favor of the plaintiff, for $700 with interest from February 4, 1912. [3]

3. If the jury believe that the defendant concealed from the plaintiff the fact that he had sold the horse in

question to Trexler Brothers & Company in February, 1902, and that the plaintiff did not acquire knowledge of such sale until March 4, 1908, then the defendant would not be entitled to commission under this agreement, and the jury must return a verdict for the plaintiff for $700, the price for which the horse was sold, with interest from February 4, 1902. *Answer:* We affirm that point. [4]

4. If the jury believe that the defendant concealed from the plaintiff the fact that he had sold the horse in question to Trexler Brothers & Company, and had written the plaintiff letters, representing that he had sold the horse in Grafton, W. Va., and he was killed in shipping, thereby misleading the plaintiff, so that he lost his right to recover the value of the horse from Trexler Brothers & Company, then they must return a verdict for the plaintiff for $700, with interest from February 4, 1902. *Answer:* This point is substantially the same as the former points and we affirm it, if you believe, gentlemen of the jury, that a fraud was perpetrated on D. M. Cloyd by falsely representing that the horse was not sold and fraudulently concealed the facts of the sale so that Mr. Cloyd was prevented from securing his rights. [5]

5. Even if the jury should believe from the evidence that the plaintiff entered into a contract, or an agreement with the defendant that he would accept the price of the horse out of the proceeds of the suit brought by Trexler Brothers & Company, against the B. & O. R. R. Co., and if the jury should further believe that the plaintiff entered into the agreement without any knowledge of the fact that the defendant had actually sold the horse to Trexler Brothers & Co., on February 4, 1902, then the plaintiff would not be bound to that agreement as testified to by the defendant for the reason that it was obtained by fraud, and the jury should disregard the agreement and return a verdict for the plaintiff for the sum of $700, with interest from February 4, 1902. *Answer:* We affirm this point. It is practically as we have already instructed you in the general charge and it is in line, also, with the former points. [6]

6. If the jury believe that the defendant sold the horse to Trexler Brothers & Co., on February 4, 1902, and that Trexler Brothers & Co., were solvent up to January 25, 1905, and that the defendant concealed from the plaintiff the fact that he sold the horse to Trexler Brothers & Co., until it was too late for the plaintiff to bring suit against Trexler Brothers & Co., to recover the price of the horse, then the jury should return a verdict for the plaintiff, for the full value of the horse, with interest from February 4, 1902. *Answer:* We affirm this point with this qualification, that as I have already instructed you, if there was a fraudulent concealment of the sale of this horse so as to deprive D. M. Cloyd from securing his rights at the time, then this defendant would be liable for the sum of $700 together with the interest from February 4, 1912. [7]

Defendant presented this point.

4. Under all the evidence in the case the verdict must be for the defendant. *Answer:* We refuse this point, gentlemen of the jury, and leave the whole question with you. [8]

Verdict and judgment for plaintiff for $1,121.17. Defendant appealed.

*Errors assigned* were (1, 3–8) above instructions, quoting them; and (2) ruling on evidence, quoting the bill of exceptions.

*Thos. F. Bailey, Samuel I. Spyker* and *Chas. C. Brewster,* for appellant.

*H. H. Waite* and *H. L. Henderson,* for appellee.

Opinion by Rice, P. J., February 27, 1913:

In January, 1902, D. M. Cloyd, the original plaintiff, delivered to the defendant, in Virginia, a horse to be sold by the latter on commission. By the terms of the agreement, the animal was to be sold for such price as the defendant should deem fit "so that the colt shall pay to

D. M. Cloyd the full sum of $500 and whatever part of the profits over that amount that is mutually satisfactory." The defendant brought the horse to Huntingdon county, Pennsylvania, and in February, 1902, sold him to the firm of Trexler Bros. & Co. for $700. Soon thereafter the horse was shipped by the latter to West Virginia and was killed in a railroad accident. On February 25 of that year, the defendant wrote to Mr. Cloyd informing him of the death of the horse, and also describing the railroad accident, but the letter did not inform him that he had sold the horse to Trexler Bros. & Co. Indeed it was so worded as to convey the impression that he personally had shipped the horse to West Virginia to be sold. Shortly after the accident Trexler Bros. & Co. brought an action in Bedford county, Pennsylvania, against the Baltimore & Ohio Railroad Co. for the recovery of damages for the loss of the horse (see 28 Pa. Superior Ct. 198, 207), and during the progress of that litigation the defendant wrote Mr. Cloyd letters regarding it, but did not inform him that the suit was brought by Trexler Bros. & Co. On the contrary, his letters, particularly the one of November 16, 1905, were calculated to convey the impression that the suit was one he was carrying on. In April, 1908, Mr. Cloyd brought this action of assumpsit to recover the price for which the defendant sold the horse. He alleged in his statement of claim, and the evidence given on this as well as on the first trial of the case, was sufficient to warrant a finding by the jury, that he did not learn that the horse had been sold until March, 1908, and that the defendant fraudulently concealed the fact until it was too late to bring suit against Trexler Bros. & Co.

The case was twice tried. Before the second trial the plaintiff died and his executors were substituted in his place. His death and the issue of letters testamentary to the plaintiffs were admitted, but it is contended that they could not maintain the action without offering the will showing that they were vested with that right, "and

until it clearly appeared by that instrument that the right to maintain this action had not been vested in some other person or beneficiary under the will." As the action was one which by law survives, their power to prosecute the suit to final judgment as fully as the decedent might have done if he had lived, was given by the act of February 24, 1834, P. L. 70. It was not necessary that this should be expressly mentioned in the will. And if there was anything in that instrument which would affect their prima facie right to prosecute the action, it was incumbent on the defendant to show it.

Complaint is made of the rejection of the offer of the books of account of Trexler Bros. & Co. for the purpose of showing that they had not paid the defendant for the horse. As will be seen later, this was an immaterial fact. In other words, it was not essential for the plaintiff to show that the price of the horse had been paid to him, and it would have constituted no defense to have shown that it was not paid to him. The case did not turn on the question whether he had received the price, but on the question whether he had fraudulently concealed the fact of sale from Mr. Cloyd, and the latter had sustained loss in consequence of this breach of his duty as agent. Perhaps the books were properly admitted in evidence on the first trial, for the purpose of contradicting J. F. Trexler, who was a witness on that trial. But he was not a witness on the second trial, and we can see no ground whatever for admitting the books for the purpose of affecting the plaintiffs.

It is argued that, in submitting the case to the jury, particularly in affirming the plaintiff's second, third and fourth points, the court conveyed the impression that it was immaterial whether the concealment of the fact of sale arose by inadvertence or with fraudulent intent. It is true, the learned judge did not use the word "fraudulent" every time the subject of concealment was mentioned. But, viewing the charge and the answers to points as a whole, the jury could not have failed to understand that

fraudulent concealment, not mere inadvertent omission to inform Mr. Cloyd of the sale, must be found in order to entitle the plaintiffs to recover. This idea was clearly expressed and reiterated in the general charge. It was expressed in the qualifying remarks made in answering the plaintiffs' second, fourth, sixth and seventh points, and was brought very forcibly to the jury's attention by the unqualified affirmation of the defendant's first point, which was to the effect that, if the defendant did not disclose to Mr. Cloyd, his principal, the fact that he had sold the horse, "out of inadvertence and without fraudulent intent in said failure to disclose," and did not receive the purchase money from Trexler Bros. & Co. or from any other source, the plaintiffs could not recover. There being no substantial error in the manner of submitting the question to the jury, their verdict must be taken as implying a finding that the defendant fraudulently concealed from his principal the fact that he had sold the horse, and that the latter did not learn that fact until it was too late for him to bring suit against the purchaser for the price. In view of such finding, it cannot be said that the plaintiff's right of action against his unfaithful agent was barred by the statute of limitations. This was clearly decided when the case was here before. Our Brother PORTER, speaking for the court, then said: "When property is delivered to an agent for sale upon commission at a distant point, while it is the duty of the creditor to make inquiry about his claim, it is likewise the duty of the agent to give him full and proper information in regard thereto when inquiry is made, and should the creditor be misled by the information thus given, within the time of the running of the statute of limitations, the statute will only begin to run against the creditor from the time he acquired knowledge of the receipt of the money by the agent. When a wrongdoer adds to his original fraud affirmative efforts to divert or mislead or prevent discovery, then he gives to his original act a continuing character by virtue of which he deprives it of the pro-

tection of the statute until discovery: Wickersham v. Lee, 83 Pa. 416; Sankey v. McElevey, 104 Pa. 265; Smith v. Blachley, 198 Pa. 173:" Cloyd v. Reynolds, 44 Pa. Superior Ct. 81.

The finding of the jury as to the defendant's fraudulent concealment and Mr. Cloyd's ignorance of the fact of sale, is also a conclusive answer to the defendant's contention that in 1903 a new agreement was substituted for the original agreement, whereby Mr. Cloyd was to receive $500 and one-third of the amount of damages that should be recovered from the Baltimore & Ohio Railroad Co. The plaintiff denied that such new agreement was made, but the court submitted that question of fact to the jury, with instruction that if such agreement was entered into fairly and honestly between the parties, with full knowledge of the facts on the part of Mr. Cloyd, then this was a substitute agreement which bound the parties and was a complete defense, but if it was brought about by the defendant's fraudulent concealment and misrepresentation of the facts it would not bind the parties. Viewing the answer to the plaintiffs' fifth point in connection with these instructions in the general charge, which were then called to the attention of the jury, the answer to the defendant's first point, to which we have alluded, the answer to his third point, and the answer to the plaintiffs' eighth point, we are of opinion that the question as to the substitution of a new agreement was submitted to the jury in a manner quite as favorable to him as he was entitled to ask. For it is to be borne in mind that the defendant and his principal did not stand at arm's length, but, by reason of the fiduciary relation between them, it was the duty of the former to act with entire loyalty and good faith towards the latter. Loyalty to his principal's interest requires that an agent should make known to his principal every material fact concerning the subject-matter of his agency that comes to his knowledge in the course of his agency; and if he fails to do so he is liable to his principal for any

loss suffered in consequence of such failure. And in some cases it has been held that by so doing the agent makes the obligation or claim his own, on which he is liable to his principal as the third person would have been: 31 Cyc. 1450; Harvey v. Turner, 4 Rawle, 223; Arrott v. Brown, 6 Whart. 9; Brown v. Arrott, 6 W. & S. 402. This principle as to the agent's duty to make full disclosures applies with peculiar force to transactions between the principal and agent respecting the subject-matter of the agency. Hence, if the alleged new agreement was entered into at the time when, as a result of the defendant's intentional concealment, Mr. Cloyd was ignorant of this important and material fact, the defendant is not in position to insist that the original agreement was superseded by the new one, or, indeed, to claim any benefit whatever from the latter.

With regard to the instructions concerning the solvency or insolvency of the purchasers of the horse, it is sufficient to say that it is immaterial whether they were solvent or insolvent. Certainly, there is no evidence of their insolvency, and, therefore, no error harmful to the defendant was committed in submitting the question to the jury.

We think the case was well tried, and, upon full consideration of all the assignments of error, we discover no valid ground for disturbing the verdict and judgment thereon.

The assignments of error are overruled and the judgment is affirmed.