## Weiner v. Armstrong Cork Co.

*Robert S. Whitehill*, for plaintiffs.
*John K. Hart*, of *Buchanan, Ingersoll, Rodewald, Kyle and Buerger*, for defendant.

HENDERSON, *P.J.*, July 20, 1978—This action arose from plaintiffs' purchase of a floor covering

manufactured and distributed by defendant. Eventually the floor covering discolored. Plaintiffs seek damages claiming that defendant breached its express guarantee and also the implied warranties of merchantability and fitness for a particular purpose. After the pleadings were closed, defendant filed a motion for judgment on the pleadings. Defendant argued that the express warranty was not breached since the time limitation in that guarantee had passed before any defect was noticed and that any implied warranties were barred by the statute of limitations or, alternatively, that plaintiff failed to state a cause of action upon which relief can be granted. We now grant defendant's motion.

A motion for judgment on the pleadings is in the nature of a demurrer. Therefore all of plaintiffs' well-pleaded allegations are viewed as true and only those facts specifically admitted by them may be considered against them: Bata v. Central-Penn National Bank of Philadelphia, 423 Pa. 373, 224 A. 2d 174 (1966); Miller v. Prudential Insurance Company of America, 239 Pa. Superior Ct. 467, 362 A. 2d 1017 (1976). Such a motion should only be granted where the moving party's right to prevail is so clear that a trial would be a fruitless exercise: Wade v. Heisey, 243 Pa. Superior Ct. 8, 364 A. 2d 423 (1976).

Plaintiffs ordered $273 worth of Armstrong Cushioned Coronelle floor covering from Marlin Furniture, an authorized agent of defendant, no later than October 15, 1971. Defendant, through its agents and advertising program, represented to plaintiffs that this type of floor covering would be fit for covering the floors at plaintiffs' home. An express guarantee (attached as Exhibit A to plaintiffs' complaint) given by defendant warranted that the

floor covering would be free from manufacturing defects in material and workmanship. The floor covering was completely installed no later than February 28, 1972. In December of 1975, plaintiffs noticed that the floor covering was discoloring and developing unsightly spots. They immediately informed defendant of this problem. In a letter dated March 25, 1976, and attached to the complaint as Exhibit B, a representative of defendant notified plaintiffs that the spots on the floor were caused by the exposure of the floor to strong sunlight and that defendant was granting plaintiffs a credit for 50 percent of the original value of the floor covering. In another letter from a representative of defendant, dated June 3 and attached to the complaint as Exhibit C, it is admitted that plaintiffs' problem, classified as sun scorching, takes two or three years to develop and plaintiffs were granted an additional adjustment which amounted to a full allowance on the material involved. Plaintiffs claim that because of the defects which were known by defendant they are required to replace the floor covering, incurring additional damages. The complaint was filed in November of 1977, with plaintiffs asking for damages in the amount of $2,706.12.

From these facts it appears that plaintiffs were untimely in filing their complaint unless some events occurred which would toll the time limitations normally applicable to the warranties upon which the claim for relief is based. The express guarantee specifically states that Armstrong will make no adjustment of any kind for either the flooring material or labor when notified of a defect more than three years after the date of purchase. Defendants were not notified of the defect until December of 1975, which was clearly more than three

years after the date of purchase, so that recovery cannot be made upon the express warranty.

Since this case involves a transaction in goods, the applicable statute of limitations for any implied warranty is found in section 2-725 of the Uniform Commercial Code of April 6, 1953, P.L. 3, as amended, 12A P.S. §2-725. The pertinent portions of this section read as follows:

"(1)  An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

"(2)  A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

". . .

"(4)  This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this Act becomes effective."

Under this statute, the fact that the defect was undiscoverable when tender of delivery was made does not alter the accrual of the cause of action and the commencement of the running of the statute unless the action is brought under a warranty which explicitly extends to future performance. Plaintiffs did not allege, nor does it appear, that the warranties under which they seek recovery

explicitly extend to future performance. See Binkley Co. v. Teledyne Mid-America Corp., 460 F. 2d 276 (8th Cir. 1972), aff'g 333 F. Supp. 1183 (E. D. Mo. 1971). Here the tender of delivery would not have occurred any later than February 28, 1972, the time of installation: see Perry v. Augustine, 37 D. & C. 2d 416 (Mercer Co. 1965), which is more than five and a half years before the complaint was filed. The four year period was obviously exceeded: Rufo v. The Bastian-Blessing Co.,417 Pa. 107, 207 A. 2d 823 (1965).

Plaintiffs do not dispute this but seek to avoid the application of the statute and the time limitation in the express guarantee by maintaining that the statute has been tolled. They base this argument upon two grounds: (1) that defendant knew of and concealed the defect from plaintiffs and (2) that the letters from defendant which are attached to the complaint are a waiver of the statute of limitations. Since section 2-725(4) expressly provides that the law on tolling of the statute of limitations is not altered by this section, we must look to the decisions of the courts of this Commonwealth to determine the validity of plaintiffs' position.

Plaintiffs allege that the letters attached to the complaint show that defendant had knowledge of the latent defect in the floor covering. Assuming that this is correct, it must now be determined whether defendant's mere failure to notify plaintiffs of the latent defect constitutes such fraudulant concealment as to toll the statute of limitations. The law in this state estops a defendant from utilizing the bar of the statute to shield himself from liability when he, through fraud or concealment, causes another to relax his vigilance or deviate

from his right of inquiry: Schaffer v. Larzelere, 410 Pa. 402, 189 A. 2d 267 (1963).

Plaintiffs do not allege any affirmative acts of concealment on the part of defendant but argue that non-disclosure of a defect known to defendant which plaintiffs would be unable to find after reasonable investigation is in itself an act of concealment which would toll the statute.

We must be cautious not to apply to this case the principle that if the existence of an injury is not known and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitation does not begin to run until discovery of the injury is reasonably possible. For example, the case of Med-Mar, Inc. v. Dilworth, 214 Pa. Superior Ct. 402, 257 A. 2d 910 (1969), cited by plaintiffs, was clearly decided upon the application of that rule. Since that case involved a construction contract, the holding that the statute of limitations for a cause of action based upon a latent defect only begins to run when the defect could have been discovered by the exercise of ordinary and reasonable care is proper but certainly not controlling here. To apply such a principle to cases involving the sale of goods would effectively nullify subsection (2) of section 2-725 of the Uniform Commercial Code which makes lack of knowledge by an aggrieved party irrelevant to the running of the statute except in cases where the warranty explicitly extends to future performance.

Many cases discussing the type of concealment of the cause of action necessary to toll the statute of limitations speak of a requirement that the concealment be some independent and affirmative act rather than simply mere silence: Overfield v. Penn-

road Co., 146 F. 2d 889 (3d Cir. 1944); Deemer v. Weaver, 324 Pa. 85, 88, 187 Atl. 215, 216 (1936); Smith v. Blachley, 198 Pa. 173, 178, 47 Atl. 985, 986 (1901). Normally this is because without an affirmative act of concealment the cause of action would or should have been discovered within the period of the statute. However, in this case, no affirmative act was necessary to ensure that the latent defect would remain undiscovered (although plaintiff does not allege specifically that defendant had knowledge of the defect at the time of purchase and installation).

Our major difficulty with this case is caused by the conflict between the policy of section 2-725 of setting a uniform, definite period for bringing actions, thus giving some element of certainty and stability to the world of commercial transactions, and the idea that a wrongdoer should not be able to use the statute of limitations as a shield to immunize himself from the effects of his hidden wrongs. In this situation we must weigh the wrong alleged against the clear policy of the code.

Initially it must be noted this is a basic commercial transaction case, not a products liability case using breach of warranty as an alternative remedy. No personal injury was caused by the alleged defect. This was the type of transaction the drafters of the code had in mind when they drew up section 2-725. Plaintiffs were given an express warranty which only lasted three years. The concealment which plaintiffs allege consists only of defendant's failure to tell plaintiffs of the defect. The complaint does not make any allegations as to whether defendant had knowledge of the defect at the time the material was sold, or whether this knowlege was

gained at some later date, perhaps even more than four years after the installation. Defendant is not charged with any fraudulent conduct.

Although this is a close case, considering the totality of the circumstances, the statute must control. This does not mean that a manufacturer or seller can always mislead a consumer regarding the quality of a product and then shield himself from any liability by raising section 2-725. If the pleadings in this case had alleged somewhat different facts, for example, if plaintiffs had claimed that defendant's agents had assured plaintiffs the sunlight would not harm the flooring, a different result might be reached. But the fraud or concealment must contain more substance than that alleged here in order to toll the controlling statute of limitations.

Plaintiffs alternatively assert that defendant by letters of March 25 and June 3, 1976 (attached to the complaint as Exhibits B and C) waived the applicable statute of limitations. In the first of these letters a customer service representative of defendant diagnosed the difficulty as sunburn and confirmed that a credit for 50 percent of the original value of the flooring was being issued in plaintiffs' name to the dealer. The second letter classified the problem as sun scorching which normally takes two to three years to develop. The letter went on to state:

"We can appreciate your concern and your comment that it was impossible for you to notify us of the condition with your floor as it was one that accumulated over a period of time. With this in mind, an additional adjustment will be made that

will amount to a full allowance on the material involved. This additional adjustment will be written up immediately and processed through Marlin Furniture.

We thank you for understanding in allowing us to explain our position in this matter."

The letters written by defendant's agents indicated that a credit was being extended to plaintiffs for the amount which they had expended to purchase the flooring. However the entry of a credit on an account will not be considered as part payment in order to take a case outside of the statute of limitations unless some evidence is introduced to show that a payment was actually made: Markee v. Reyburn, 258 Pa. 277, 101 Atl. 993 (1917); Smith Estate, 63 D. & C. 416, 64 Montg. 77 (1947).

Neither can the letters be considered as an acknowledgment sufficient to bar the statute. " 'To toll the statute of limitations there must be a clear and unequivocal acknowledgment of the debt and a specification of the amount or a reference to something by which the amount can be definitely ascertained, coupled with an express or implied promise to pay.' " Huffman Estate (No. 3), 349 Pa. 59, 63, 36 A. 2d 640, 643 (1944), quoting from Markee v. Reyburn, supra.

These requirements are to be strictly enforced: Markee v. Rayburn, supra.

Nowhere in the letters is found an actual admission by Armstrong that it owes a debt to plaintiffs. Any finding of an acknowledgment would have to be inferred from the extension of a credit, but Armstrong may have made its offer in order to mollify its customers, or to preclude the possibility of a lawsuit in which the costs would be greater than

the actual claim of the customer. The "clear and unequivocal acknowledgment" required to bar the defense of the statute was not made in the letters cited by plaintiffs.

Finally, it must be decided whether or not the promise to extend credit by itself tolls the statute. Even if the statute is tolled by this promise, it is only tolled to the extent of the credit offered which is $273.20. See 1A Carbin on Contracts, §215 (1963); 1 Williston on Contracts §131 (3d ed. 1957). The problem with this promise is that it could just as easily be considered as an offer of compromise which, according to the leading case on the point, Gest v. Heiskil, 5 Rawle 134 (Pa.1835), is insufficient to raise a promise to pay at law.

Defendant's motion for a judgment on the pleadings is granted and plaintiff are given 20 days to file an amended complaint.

### ORDER

Now, July 20, 1978, in conformity with the opinion filed herewith, it is hereby ordered, adjudged and decreed that defendant's motion for judgment on the pleadings be granted.