## Hartmann's Estate

Before Stearne, Sinkler, Klein, Bolger and Ladner, JJ.

318

*Charles Myers*, of *Barnes, Myers & Price*, for exceptants.

*R. W. Archbald, Jr.*, contra.

BOLGER, J., April 5, 1940.—Exceptant seeks to overcome the finding of laches by attempting to distinguish the cases cited by the auditing judge in support of his application of the doctrine. He claims that the facts here constitute a type of constructive trust different from those in the cited cases—one to which the analogy of the statute of limitations does not apply. In support of his position, he cites In re Eyre-Williams, 2 L. R. Ch. 533 (1923), wherein a settlor in a deed of marriage settlement in 1886 assigned to the trust a mortgage the proceeds of which he collected in 1887 and did not turn over to the trustees. Settlor's widow, who had a succeeding life interest in the trust following the death of the settlor, was prevented by the terms of the deed from raising any question during settlor's lifetime. Settlor's estate was held liable, the Court of Chancery ruling that when the settlor received the mortgage money knowing it was trust prop-

erty he immediately became constructive trustee thereof for the purposes of the trust, and that such type of trustee is not entitled to rely upon the statute of limitations or its analogy, laches. The case is authority for the principle that mere lapse of time is no defense to such a trustee. Exceptant also cites two cases in this State, both of which sustain this principle: Marshall's Estate, 138 Pa. 285; Pennsylvania Co., etc., et al. v. Ninth Bank & Trust Co., 306 Pa. 148. In the latter case Justice Drew said (p. 154):

"As a participant in the breach of trust, it [defendant] holds the property impressed with the same trust, and is subject to the same rules and remedies, and has no greater rights or privileges, than the original trustee from whom it received the property . . .".

However, the auditing judge's conclusion was not based solely upon lapse of time. He held claimant guilty of lack of due diligence in failing to discover the alleged fraud and institute proceedings. In this finding he relied upon two factors: (1) That the burden of proof rested upon claimant, after the long lapse of time, to (2) explain satisfactorily the delay in institution of suit. He also made a finding of fact that the substituted trustee was possessed of information which, if investigated fully, would have disclosed the existence of the facts now appearing; that having failed to do so, he is now as a matter of law precluded from recovering. We are of the opinion that the auditing judge was correct.

In a long line of cases accentuated by Smith v. Blachley, 198 Pa. 173, and Deemer et al. v. Weaver, Executrix, 324 Pa. 85, in addition to those appropriately cited by the auditing judge involving trusts of all kinds, we find the doctrine of laches recognized and applied in proper instances. Pennsylvania is not alone in this respect. 4 Bogert on Trusts and Trustees, p. 2742, §948, says:

"Laches is a doctrine applicable alike to the rights of cestuis under resulting, constructive, and express trusts, although it has been said that the court is more reluctant

to apply it in the latter case than in the case of implied trusts."

See also A. L. I. Restatement of Trusts §219, which is as follows:

"Laches of the Beneficiary.

"(1) The beneficiary cannot hold the trustee liable for a breach of trust if he fails to sue the trustee for the breach of trust for so long a time and under such circumstances that it would be inequitable to permit him to hold the trustee liable.

"(2) The beneficiary is not barred merely by lapse of time from enforcing the trust, but if the trustee repudiates the trust to the knowledge of the beneficiary, the beneficiary may be barred by laches from enforcing the trust."

In comment (a) on the above subsection (1) are listed the factors which the court will consider among others:

"(1) The length of time which has elapsed between the commission of the breach of trust and the bringing of suit; (2) whether the beneficiary knew or had reason to know of the breach of trust; (3) whether the beneficiary was under an incapacity; (4) whether the beneficiary's interest was presently enjoyable or enjoyable only in the future; (5) whether the beneficiary had complained of the breach of trust; (6) the reasons for the delay of the beneficiary in suing; (7) change of position by the trustee, including loss of rights against third persons; (8) the death of witnesses or parties; (9) hardship to the beneficiary if relief is not given; (10) hardship to the trustee if relief is given."

The auditing judge has properly found that the factors nos. 1, 2, 5, 6, 8 and the first alternative under no. 4, to wit, that the beneficiary's interest was presently enjoyable, being present in this case according to the decisions cited, are fatal to exceptant's claim. See also §§148 and 179 of the Restatement.

In Pennsylvania a complainant will not be heard to simply aver and prove that he did not know of the breach

of trust, but he must add that he was diligent in the performance of his duties and that in spite thereof he did not learn of the breach. Bills in equity lacking such averments have been consistently dismissed and such action sustained by our appellate courts. The cases cited in the adjudication amply support this statement of the law which is only repeated here for purposes of emphasis.

The adjudication recites the source from which the original trustees could readily have obtained the essential information. It is unfortunate that death has sealed their lips, as well as those of Mrs. Hartmann, but these circumstances only enhance our obligation now to refuse to require what is in essence an accounting from Mrs. Hartmann's personal representatives.

The record sustains the finding of fact of the auditing judge that the substituted trustee possessed information which required immediate inquiry by him. This inquiry, if instituted and pursued with adequate available remedies so to do, would have yielded the information now disclosed. On page 15 of the record appears the statement by counsel for claimant that the substituted trustee "knew that Mr. Shipley had some property belonging to Mrs. Hartmann, but he did not know what it was and he did not know the source of that property. . . ." Mr. Shipley (Mrs. Hartmann's agent) lived in Philadelphia. These facts are not dissimilar to Smith v. Blachley, supra, which contains a discussion of the doctrine of laches. There plaintiffs had failed to pursue an investigation which they had originally begun, seven years before suit, based only on gossip and suspicion; and this investigation, if pursued, would have yielded the incriminating information. Recovery was denied on the ground of laches.

There is another reason which accountant advanced at the audit and presently insists upon, which we regard as a further insuperable obstacle to allowance of the claim. The auditing judge did not rely upon it in his

adjudication, but with his consent, it is now stated. It is that the trustee is a representative of persons who have no status to complain.

Under the authority of Lyon et al. v. Alexander, 304 Pa. 288, Curran's Estate, 312 Pa. 416, Perkins' Trust Estate, 314 Pa. 49, and Wilbur's Estate, 334 Pa. 45, the appointees of testatrix have no standing to complain of the actions of Mrs. Hartmann in failing to comply with the provision in the deed of trust requiring her to assign subsequently-acquired property to the trustees. Testatrix was the settlor of the trust; she held a life interest thereunder with general power of appointment by will. As held in Wilbur's Estate, supra, she, therefore, had an interest tantamount to a fee and no one but she had any interest in the power to appoint.

In Jackson's Estate, 337 Pa. 561, where testatrix possessed a life estate and power of appointment by will of a trust created by her in her lifetime, Justice Maxey said: "Except in a very technical legal sense this fund was Mrs. Florence Baird Jackson's own property."

Exceptant attempts to distinguish our case from Lyon et al. v. Alexander by pointing out that there there was no trust and no alternative gift over in default of appointment. This lack of similarity presents no difficulty since the spendthrift trust provisions are not involved and the alternative gift over does not take effect because Mrs. Hartmann has appointed by her will. It is suggested also that the other cited cases involve only questions of surcharge. We are not impressed with this suggestion. Surcharge is a corollary to the principle of estoppel involved here, because the appointees under Mrs. Hartmann's will would be estopped from instituting surcharge proceedings against the trustee for his failure to pursue Mr. Shipley and Mrs. Hartmann prior to the latter's death.

Whether the trustee could have recovered this property from Mrs. Hartmann or her agent in her lifetime we need not decide, but now that she is dead the trustee,

representing merely the appointees under her will, has no status to complain.

The exceptions are dismissed and the adjudication is confirmed absolutely.